702 A.2d 540

COMMONWEALTH of Pennsylvania, Appellee,

v.

Rodney COLLINS, Appellant.

Supreme Court of Pennsylvania.

Argued April 28, 1997.

Decided Oct. 27, 1997.

Reargument Denied Dec. 11, 1997.

594

James S. Bruno, Philadelphia, for R. Collins.

Catherine Marshall, Jonathan W. Hugg, Philadelphia, Robert A. Graci, Harrisburg, for the Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION OF THE COURT*

CAPPY, Justice.

Following a jury trial, Appellant was sentenced to death for the first degree murder of Andre Graves ("Graves").[1] After a review of the evidence and the issues raised by Appellant, we affirm.[2]

1. 18 Pa.C.S. § 2502(a).

2. A sentence of death is subject to automatic review by this court. 42 Pa.C.S. § 9711(h)(1).

On July 13, 1992, shortly before 4 a.m., Lillian Albritton ("Albritton") was awakened by the sound of gunfire on the street outside her home in Philadelphia. She ran to the window and observed a driverless car drift across the street and come to rest in front of her home. Inside, slumped over the front passenger seat, was the dead body of Andre Graves.

The police arrived within minutes. They observed that Graves had two bullet holes in the back of the head, and a large exit wound under his right eye. A third bullet was later found to have grazed his skull. Blood was splattered away from Graves and toward the dashboard in front of him and the seat to his side, both of which were riddled with bullet holes.

The physical evidence indicated that Graves had been shot from the back seat of the car. Both rear doors were wide open. Two copper bullet casings, consistent with the bullets which had killed Graves, were found in the rear passenger compartment, and additional casings were located under the driver's seat and in the street nearby. Two bullets were embedded in the front passenger dashboard and door beside the victim. Two additional bullets were recovered by the police from the homes of Albritton's neighbors and fragments of a fifth bullet lay on the street next to where the car came to rest. Forensic examination revealed that all of the bullets were fired from the same gun.

Homicide detectives interviewed Kevin Cofer ("Cofer"), who informed them that he saw the shooting and that Appellant was the killer. Cofer stated that at the time of the murder, he, Graves and Appellant were returning from an unsuccessful search for members of a West Philadelphia gang, the "Boys from the Bottom". Graves had been seeking revenge against the gang members for a beating he had suffered at their hands the previous afternoon, and was in the front passenger seat. Cofer was in the driver's seat. Appellant sat alone in the back.

Cofer informed the police that Appellant told Cofer to turn onto 54th Street. Cofer stated that, "When I turned up the block, all of a sudden I heard rapid gunfire [from] the back

seat ... When I turned, I saw [Appellant] shooting Andre Graves in the back of the head." Cofer stated that he saw Appellant fire at least three rounds from a black handgun into Graves from point blank range.

Cofer slammed on the brakes, almost crashing the car. Appellant exited the back seat and fled to the nearby apartment of his girlfriend, Thiasa Cox ("Cox"). Cofer chased after Appellant and inside Cox's apartment confronted him with Graves' murder. Appellant responded that Graves "could have got us rocked" (i.e. killed). In a subsequent confrontation Appellant asserted that the murder was justified because Graves had informed "The Boys" that Appellant "was doing all the shooting at them."

At Appellant's trial, several witnesses testified that Appellant had been trying to locate Graves on the day of the murder. One witness testified that Appellant owned a black .45 handgun, and that on the day of the murder the witness handed the gun to Appellant. Appellant was still carrying the gun at the time he joined Cofer and Graves. Another witness recalled seeing Cofer, Graves and Appellant in the car, with Appellant in the rear seat, Graves in the front and Cofer driving. Witnesses present at Cox's apartment testified that Appellant had blood on his knee when he entered, and that he was extremely agitated and nervous.

The jury found Appellant guilty of first degree murder and possessing an instrument of crime. In the penalty phase, the jury found two aggravating circumstances: 1) that by shooting the victim as he sat next to Cofer, as well as by doing so in a residential neighborhood and hitting two occupied homes, Appellant knowingly created a grave risk to others when he murdered Graves;[3] and 2) that Appellant had a significant history of committing violent felonies.[4] The jury determined that these aggravating circumstances outweighed the mitigating circumstances (that Appellant had a troubled childhood

3. 42 Pa.C.S. § 9711(d)(7).
4. 42 Pa.C.S. § 9711(d)(9).

and Appellant's age at the time of the murder). Appellant was sentenced to death.

While Appellant does not specifically contest the sufficiency of the evidence to sustain his conviction, in any case in which we affirm the imposition of the sentence of death, we are required to determine if the evidence is sufficient to sustain Appellant's conviction for first degree murder. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert denied* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The test is whether, viewing all evidence admitted at trial, together with all reasonable inferences therefrom, in a light most favorable to the Commonwealth as verdict winner, the trier of fact could have found that the defendant's guilt was established beyond a reasonable doubt. *Commonwealth v. Burgos*, 530 Pa. 473, 476, 610 A.2d 11, 13 (1992).

To prove murder in the first degree, the Commonwealth must show that a person was killed unlawfully, that the person accused did the killing and that the killing was done in an intentional, deliberate and premeditated manner. *Commonwealth v. LaCava*, 542 Pa. 160, 171, 666 A.2d 221, 226 (1995). The Commonwealth presented evidence which showed that Graves was unlawfully killed by multiple gunshots fired into the back of his head, and that Appellant fired the gun. The use of a deadly weapon on a vital part of the victim's body establishes the degree of intent necessary to support a first degree murder charge. *Id.* at 171, 666 A.2d at 226. Additional evidence of premeditation could be found in testimony that Appellant was looking for Graves earlier in the day and that Appellant took a gun with him without revealing the fact to Graves and Cofer, and in Appellant's explanation to Cofer of his motive for killing Graves. The evidence is clearly sufficient to support a finding of first degree murder.

Appellant brings three specific assignments of error to our attention: that the Commonwealth attorney's statements and tactics were so inflammatory that they diverted the jury's attention from its function; that Appellant's trial counsel was

ineffective for failing to object to those statements and tactics; and that his trial counsel was ineffective for not requesting that an alibi instruction be given to the jury.

The statements to which Appellant takes exception took place during the Commonwealth's examination of Cofer and during closing argument. As noted above, Cofer had given a statement to the police in which he accused Appellant of the murder of Graves, and had subsequently given preliminary hearing testimony to the same effect. At trial, however, Cofer attempted to recant his prior statements. The Commonwealth introduced Cofer's statement to the police, his prior testimony and two letters written by Appellant to Cofer, in which Appellant pressed Cofer to recant or risk being branded a "snitch". The Commonwealth also elicited testimony from Cofer that he was afraid for his life if he testified.[5]

5. The exchange was as follows:

Q. Now, speaking of swearing on the Bible, you swore on the Bible on August the 5th, 1992 when you came to Court to testify at the preliminary hearing in this case. Did you not?
A. Yes
Q. Did it mean anything to you when you swore on the Bible?
A. Yes
Q. It did mean something?
A. Yes.
Q. How could it mean anything if you were going to get up and lie anyway?
A. Because my life was on the line. I will lie on the Bible when my life is on the line.
Q. You were really worried more about your life than swearing on the Bible?
A. Yes.
Q. You are worried about yourself now?
A. Yes.
Q. You are worried about your life?
A. Yes.
Q. Why?
A. I am in prison. I could die at any time.
Q. Who could kill you?
A. I don't know. Any deranged lunatic.
Q. Are you afraid?
A. No.
Q. You are not afraid?
A. No.
Q. Why are you worried you are about to get killed?

■ Cofer did not testify that Appellant, or anyone else, had actually threatened him. Instead, Cofer testified that his fear arose from the fact that he was in prison. Appellant nevertheless contends that the line of questioning was improper because it unfairly created the false impression that Appellant had threatened Cofer with reprisals if he were to testify. Appellant claims that this effect was magnified by the Commonwealth's closing argument, when the prosecutor argued to the jury:

> Because wouldn't it be great, wouldn't we live in a fabulous city where **someone accused of murder can scare off and pay off and influence all of the witnesses against him**, and all you have to do is come to Court, and when they change their story and they say, I got amnesia now, or you don't have to testify, I don't want to be involved in this no more, then oh, we will all just throw up our hands and say, sorry we bothered you, let's find him not guilty.

(N.T. May 17, 1993, pp. 748–49) (Emphasis added).

Appellant argues that this summation mischaracterized Cofer's testimony, once again by implying that Appellant had threatened Cofer with reprisals if he were to testify against Appellant.

A. I am not worried exactly, but any time you are in prison, you have to be on guard.
Q. So basically, you have been living in prison for how long now?
A. Approximately six months.
Q. And tonight after you go to testify, and the whole weekend you will be in the County Prison?
A. Right.
Q. And you don't know everyone that lives up in prison. Do you?
A. No.
Q. When you came to the preliminary hearing to testify, and you swore on the Bible you weren't living in any prison then. Were you?
A. No.
Q. But you are living in a prison when you came and testified for the trial?
A. Yes.

\* \* \*

Q. Has anyone threatened you over the weekend?
A. No.
Q. Has anyone threatened you until Friday when you got here?
A. No.

■ Appellant correctly argues that threats against a witness are not admissible as an admission of guilt against the accused unless the accused is linked in some way to the making of the threat. *Commonwealth v. Carr,* 436 Pa. 124, 127, 259 A.2d 165, 167 (1969).

That was not the purpose for which the testimony was elicited. The portion of the oral cross-examination of Cofer to which Appellant objects was prompted by Cofer's failure to testify at trial in accordance with his previous statement to the police and with his preliminary hearing testimony, in each of which Cofer had stated that Appellant had shot Graves in the back of the head. Thus, the Commonwealth's line of questioning was permissible to demonstrate Cofer's motive for changing his testimony was that he was afraid of the consequences if he testified truthfully. *Id.; Commonwealth v. Ragan,* 538 Pa. 2, 27–28, 645 A.2d 811, 823–24 (1994); *Commonwealth v. Floyd,* 494 Pa. 537, 431 A.2d 984 (1981); *Commonwealth v. Martin,* 356 Pa.Super. 525, 531, 515 A.2d 18, 20–21 (1986).

Furthermore, while Appellant may not have threatened to personally perform acts of violence against Cofer, Appellant's letters to Cofer warned Cofer of the consequences of being labelled a "snitch". Thus, the prosecutor's closing statement was fair comment on the evidence introduced during trial. The prosecutor's statement was also a legitimate rebuttal of the defense's closing argument, because the defense had argued that Cofer's earlier statements had been coerced by the police. *Cf. Commonwealth v. Graham,* 522 Pa. 115, 123 n. 6, 560 A.2d 129, 133 n. 6 (1989); *Commonwealth v. Brown,* 490 Pa. 560, 566, 417 A.2d 181, 184–85 (1980) (Closing argument by prosecution, which would have been improper standing alone, became permissible in rebuttal of argument made by defense).

■ Appellant also alleges that his trial counsel was ineffective for failing to timely object to the same portions of the prosecution's closing statement that are addressed in the immediately preceding paragraphs. In order to prevail, Appellant must establish that the underlying claim has arguable merit. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973

(1987). Because we conclude that the underlying claim is not meritorious, Appellant's counsel was not ineffective for failing to assert it.

In Appellant's third assignment of error, he contends that his testimony entitled him to an alibi instruction, and that his trial counsel was ineffective for failing to request the charge. We reject this claim because Appellant did not raise a true alibi defense.

The purpose of an alibi instruction is to ensure that the jury understand where the burden of proof lies. There is a danger that the jury will incorrectly view the defendant as accepting the burden of proof of demonstrating that the alibi is true, when in fact the burden lies, as always, with the Commonwealth to prove guilt beyond a reasonable doubt. The alibi instruction is given to correct any such misapprehension. *Commonwealth v. Saunders,* 529 Pa. 140, 602 A.2d 816 (1992).

An alibi instruction is required only in cases where a defendant's explanation places him at the relevant time at a different place than the scene involved and so far removed therefrom as to render it impossible for him to be the guilty party. *Commonwealth v. Kolenda,* 544 Pa. 426, 676 A.2d 1187, 1190 (1996). Where a defendant's own testimony places him close enough to the scene that it would not have been impossible for him to have committed the murder, we have held that no alibi instruction is required. *Commonwealth v. Johnson,* 538 Pa. 148, 152–53, 646 A.2d 1170 (1994) (defendant's testimony placed him within 150 feet of the scene); *Commonwealth v. Young,* 460 Pa. 598, 601–02, 334 A.2d 252 (1975) (defendant's testimony placed him within the area of the murder at the time it was committed); *see also Commonwealth v. Pounds,* 490 Pa. 621, 635, 417 A.2d 597, 604 (1980) (Larsen, J., dissenting) (it is not necessary to give an alibi instruction when the murder occurs in the living room and the defendant testifies that he was in the kitchen all evening).

Here, Appellant testified that he was seated in the back of the car only moments before the murder, and that Cofer and

Graves had dropped Appellant off one block before the location where the killing took place. Appellant further testified that he was so close to the murder scene that as soon as he heard gunfire, Cofer immediately ran up to him.

Appellant's defense depends on timing rather than on location: Appellant asserts that he left the car just before the murder whereas the Commonwealth's claim is that he exited the car immediately afterwards. Therefore, Appellant cannot assert that he was so far removed that he could not possibly have shot Graves. On the contrary, Appellant's own testimony places him in the same seat from which someone fired multiple shots into the back of Graves' head, at a very short time before those shots were fired. Appellant asserts that he was not in the car at the time of the murder. He does not assert that he could not possibly have been there.

Appellant chiefly relies on *Commonwealth v. Roxberry,* 529 Pa. 160, 602 A.2d 826 (1992). In *Roxberry,* the defendant testified that he was in a bar one half mile from the crime scene before, during and after the crime was committed. *Roxberry* is inapposite because in that case, the defendant's testimony, if believed, isolated him from all possible interaction with the victim and the crime scene, whereas in this case, Appellant's testimony placed him in close proximity to both at the relevant time.

Since an alibi instruction was not required, Appellant's trial counsel was not ineffective for failing to request one.

Having concluded that Collins' conviction for first degree murder was correct, we are required by statute to review the imposition of the sentence of death. 42 Pa.C.S. § 9711(h)(1). We review sentencing determinations for manifest abuse of discretion. *Commonwealth v. Smith,* 543 Pa. 566, 570–71, 673 A.2d 893, 895 (1996). We are required to affirm the sentence of death unless we determine:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor;

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in [42 Pa.C.S. § 9711(d) ]; or

(iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

42 Pa.C.S. § 9711(h)(3).

 The record amply supports the jury's finding of two aggravating circumstances. Appellant fired several bullets from the back seat of a car into the back of Graves' head while Graves was sitting in the front seat of the same car and while Cofer was sitting in the seat adjacent to Graves. Even from this close range, Appellant's bullets hit the dashboard and the seat of the car. These facts are comparable with those of *Commonwealth v. Rios*, 546 Pa. 271, 684 A.2d 1025 (1996) *cert. denied* —— U.S. ——, 117 S.Ct. 1825, 137 L.Ed.2d 1032 (1997), in which a grave risk to another person was found where the defendant shot a victim who was lying on the floor, when another person was lying close to the victim and two others were nearby in the same small room.

Furthermore, the shooting took place in a residential neighborhood with which Appellant was familiar, at a time of night when Appellant must have known that many residents would be in their homes. Two of Appellant's bullets entered the porches of houses in the neighborhood, in one case ricocheting off the furniture and floor. The jury could reasonably have determined that Appellant knowingly created a grave danger to those residents. *See Id.* at 295, 684 A.2d at 1036–37 ("It is not essential that the endangered bystander be in the line of fire for a grave risk to occur. The potential for an errant, ricochet or pass-through bullet can create the requisite risk."). Accordingly, the jury's finding of the aggravating circumstance that in the commission of the murder, Appellant knowingly created a grave risk of harm to another person, 42 Pa.C.S. § 9711(d)(7), rests on sufficient evidence.

 The second aggravating circumstance was that Appellant had a significant history of convictions for violent felonies. 42 Pa.C.S. § 9711(d)(9). The evidence shows that Appellant had three (3) juvenile convictions for robbery, two (2) juvenile convictions for aggravated assault and two (2) juvenile convictions for burglary. All of these convictions were for crimes of violence. *Commonwealth v. Hill,* 542 Pa. 291, 316, 666 A.2d 642, 654 (1995) (robbery); *Commonwealth v. Rivers,* 537 Pa. 394, 414–16, 644 A.2d 710, 720–21 (1994) (burglary and aggravated assault). This evidence was sufficient to constitute a significant history of violent felonies.[6] Accordingly, there is no ground for vacation of the death sentence under 42 Pa.C.S. § 9711(h)(3)(ii).

The record contains no indicia of arbitrariness. On the contrary, the record indicates that the jury conscientiously balanced the two aggravating circumstances against the mitigating circumstances found (Appellant's troubled childhood[7] and Appellant's age at the time of the killing[8]), and determined that the aggravating circumstances outweighed the mitigating circumstances. Therefore, there is no ground to vacate the sentence pursuant to 42 Pa.C.S. 9711(h)(3)(i).

Finally, we are also required to consider the proportionality of the death sentence imposed on Appellant compared with the sentence imposed on others convicted of first degree murder in which similar aggravating and mitigating factors are present.[9] A thorough review of the data compiled by the

6. Notwithstanding this author's dissent in *Commonwealth v. Baker,* 531 Pa. 541, 579, 614 A.2d 663, 682 (1992), the law in Pennsylvania, as set forth in the majority opinion in that case, is that juvenile adjudications for violent felonies may be used in order to prove the aggravating circumstance of a history of violent felonies.

7. A mitigating circumstance under 42 Pa.C.S. § 9711(e)(8), which permits the defense to introduce evidence of any mitigating circumstance not otherwise enumerated in the statute.

8. 42 Pa.C.S. § 9711(e)(4). On the day of the murder, Appellant was 10 days shy of his 24th birthday.

9. 42 Pa.C.S. § 9711(3)(h)(iii), pursuant to which this review was required, was repealed on June 25, 1997. We continue to review for proportionality all cases on direct appeal in which the sentence of death

Administrative Office of Pennsylvania Courts discloses that the penalty imposed on Appellant is not disproportionate to that imposed on others similarly situated.[10]

The order of the Court of Common Pleas is affirmed.[11]

was imposed prior to that date. *Commonwealth v. Gribble,* —— Pa. ——, —— n. 19, 703 A.2d 426, 440 n. 19 (1997).

10. *See e.g., Commonwealth v. Murphy,* 540 Pa. 318, 657 A.2d 927 (1995) (judgment of death affirmed where jury found aggravating circumstance that appellant had a history of violent felonies, and as mitigating circumstances, appellant's age and one other mitigating circumstance under the catchall provision); *Commonwealth v. Johnson,* 542 Pa. 384, 668 A.2d 97 (1995) (judgment of death affirmed where jury found aggravating circumstances that appellant had knowingly created a grave risk of harm to others and appellant had a significant history of violent felonies, and as a mitigating circumstance, appellant's age); *Commonwealth v. Judge,* 530 Pa. 403, 609 A.2d 785 (1992) (judgment of death affirmed where jury found aggravating circumstances that appellant created a grave risk of harm to others and appellant had a history of violent felonies, and as a mitigating circumstance that appellant suffered from severe mental or emotional disturbance); *Commonwealth v. Albrecht,* 510 Pa. 603, 511 A.2d 764 (1986) (sentence of death affirmed where jury found aggravating circumstance that appellant created grave risk of harm to others and as mitigating circumstances that appellant had no significant prior criminal history, that appellant suffered from severe mental or emotional disturbance and, under the catchall provision, that appellant was a 'good worker'); *and see also Commonwealth v. Reid,* 533 Pa. 508, 626 A.2d 118 (1993) (judgment of death affirmed where age of appellant younger than appellant in this case was found not to mitigate the crime, and jury found aggravating circumstances that appellant knowingly created a grave risk of harm to others and appellant had a significant history of violent felonies).

11. Pursuant to 42 Pa.C.S. § 9711(i), the prothonotary of this court is directed to immediately transmit to the Governor's office the file and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court.