J-S15011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY MINNICK, | |
| Appellant | No. 905 EDA 2014 |

Appeal from the Judgment of Sentence March 7, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013411-2012

BEFORE:  BENDER, P.J.E., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:           **FILED APRIL 08, 2016**

Anthony Minnick appeals from the judgment of sentence of 40 to 80 years' incarceration imposed March 7, 2014, following his conviction by a jury for two counts of attempted murder, four counts of aggravated assault, two counts of possessing a firearm as a convicted felon, two counts of possessing an instrument of crime, and criminal conspiracy.[1]  We affirm in part, vacate in part, and impose an amended sentence for the reasons set forth below.

The underlying facts of this case involve two related shootings.  In August 2009, Appellant and Mr. Demetrius Pittard were involved in the

_____

[*] Retired Senior Judge assigned to the Superior Court.
[1] Respectively, 18 Pa.C.S. §§ 901(a), 2702(a), 6105(a)(1), 6106(a)(1), 907(a), and 903.

packaging of narcotics. Following the disappearance of Appellant's stash of narcotics, Appellant shot Mr. Pittard thirteen times at close range, seriously injuring him. Though Mr. Pittard initially identified Appellant as the shooter, referring to him by his street name, "Ant Man," Mr. Pittard thereafter refused to cooperate with the police investigation. No charges were brought against Appellant at that time.

Three years later, in August 2012, Mr. Pittard was sitting in a car, stopped at a gas station, along with a friend, Mr. John Cox, and a young, three-year-old relative. Appellant, a passenger in a red Cadillac, drove up next to Mr. Pittard and fired several shots at him. No one was injured. Initially, Mr. Pittard declined to identify Appellant as the shooter. However, on the day following the 2012 shooting, Mr. Pittard positively identified Appellant. Mr. Pittard also renewed his identification of Appellant as the shooter in the 2009 incident.[2]

A jury trial commenced in December 2013. Following trial, Appellant was found guilty of the charges set forth above. In March 2014, the trial court sentenced Appellant to an aggregate sentence of 40 to 80 years' incarceration. Of relevance to this appeal, regarding Appellant's conviction

---

[2] Appellant does not challenge the sufficiency or weight of the evidence against him, which was considerable, including eyewitness testimony as well as documentary and videotape evidence. Thus, we need not elaborate beyond this brief factual background. For a thorough exposition, **see** Trial Court Opinion, 11/04/2014, at 2-11.

for attempted murder for the 2012 incident, the court sentenced Appellant to 20 to 40 years' incarceration, to be served consecutive to those sentences imposed for the 2009 incident.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement.[3]  The trial court issued a responsive opinion.

Appellant raises the following issues on appeal:

1.    [Whether] the trial court err[ed] in overruling [A]ppellant's objection to testimony from the victim that his family told him they had been threatened by [A]ppellant's family, where that testimony was hearsay and there was no evidence that [A]ppellant had encouraged or even been aware of his family's actions[;]

2.    [Whether] the prosecutor improperly vouch[ed] for the credibility of a witness in her opening statement when she told the jury they should believe the victim because he thought he was dying[;]

3.    [Whether] the prosecutor improperly ask[ed] the jury in her closing argument to infer that [A]ppellant was intimidating a witness, and thus inferentially also argue[d] his consciousness of guilt, based on the presence and behavior of spectators in the courtroom during that witness's testimony[;]

4.    [Whether] the trial court err[ed] in denying [Appellant's] request for a ***Kloiber*** charge[; and]

5.    [Whether] [A]ppellant's sentence of 20 to 40 years' imprisonment for attempted murder in 2012 [was] illegal where the victim did not suffer any bodily injury in that crime[.]

Appellant's Brief at 4.

_____

[3] Appellant also filed a supplemental statement of errors complained of on appeal.

- 3 -

In his first issue, Appellant contends that the trial court abused its discretion when it permitted Mr. Pittard to explain his reticence to identify Appellant as the shooter, testifying in part that Appellant's father had threatened Mr. Pittard's family. We review evidentiary decisions of the trial court for an abuse of discretion. ***Commonwealth v. Jones***, 912 A.2d 268, 281 (Pa. 2006). Here, we discern no abuse of the court's discretion.

In response to questioning from the Commonwealth soliciting an explanation why he had failed initially to identify Appellant after the August 2012 shooting, Mr. Pittard testified as follows:

> [Mr. Pittard:]     When you tell on someone, I was going right back to the same neighborhood. As I was saying, my family is involved. His father came to my house, when I told him this time and he is threatening my brother and he thought …
>
> [Counsel for Appellant]:     Objection to all of that. Move to strike. …
>
> The Court: The objection is noted.
>
> …
>
> [Commonwealth]:     Mr. Pittard, you were explaining why it was that you gave a false statement; is that correct?
>
> [Mr. Pittard:]     Yes, ma'am. His father at the last court date is threatening to kill my mother, my grandmother, the baby. He's going to pay to get us killed. His son is not going to sit in jail, that is what he said.
>
> [Counsel for Appellant]: I move for a mistrial.

Notes of Testimony (N.T.), 12/10/2013, at 151-52.

During a brief recess following this exchange, Appellant argued a mistrial was necessary because the "self-serving declaration" was "highly prejudicial." *Id.* at 154. The Commonwealth countered as follows:

> [Mr. Pittard's] state of mind and attitude as to why he was afraid of the circumstances surrounding, [*sic*] that are absolutely relevant and it is a fair line of questioning by the Commonwealth to go into exactly why he didn't want to report, [and] why he was scared[.]

*Id.* at 154-55.

The trial court denied the motion for a mistrial and permitted this testimony for the limited purpose of explaining why Mr. Pittard gave a false statement to the police in August 2012. *See* N.T. at 155-56; *see also* Trial Court Opinion at 15. Following closing arguments, the trial court addressed this limited purpose implicitly, instructing the jury as follows:

> You also heard evidence tending to show that the [Appellant's] father spoke with Mr. Pittard on a prior occasion. I'm instructing you, you must use this evidence … for one purpose only and that is to help you judge the credibility and weight of the testimony and statements of the complainant. This evidence must not be consider[ed] by you in any other way other than for the purpose I just stated.

N.T., 12/13/2013, at 75-76.

Before this Court, Appellant renews his prior arguments. According to Appellant, Mr. Pittard's testimony was inadmissible hearsay and unduly prejudicial because it suggested to the jury that Appellant had encouraged the threats. *See* Appellant's Brief at 11 (citing in support *Commonwealth v. Collins*, 702 A.2d 540, 544 (Pa. 1997) (noting that "threats against a

- 5 -

witness are not admissible as an admission of guilt against the accused unless the accused is linked in some way to the making of the threat")). The record simply does not support this argument. Thus, we reject it summarily.

Appellant also suggests that the timing of the alleged third-party threats render them inadmissible. Appellant acknowledges that testimony regarding third-party threats against a witness may be admissible on other grounds. *Id.* (again citing in support **Collins**, 702 A.2d at 544 (recognizing well-established precedent in Pennsylvania that third-party threats are admissible to explain a witness's prior inconsistent statement)). However, according to Appellant, because the threats alleged by Mr. Pittard occurred *after* his identification of Appellant in August 2012, his trial testimony does not properly address his *prior* reticence to identify Appellant.

In contrast, the Commonwealth maintains that Mr. Pittard's testimony regarding threats against his family was relevant to his credibility, particularly in how it related to his identification of Appellant. **See** Commonwealth's Brief at 14. As noted by the Commonwealth, evidence of threats to a witness may be admissible "for purposes other than to explain a prior inconsistent statement." Commonwealth's Brief at 13 (citing several cases in support). For example, though not directly on point, this Court has previously held admissible evidence of third-party threats where such evidence explained why a witness later accepted a plea deal and agreed to

testify. ***See Commonwealth v. Buchanan***, 689 A.2d 930, 934 (Pa. Super.

1997). Moreover, the Commonwealth relies upon a case from California, in

which that state's Supreme Court held as follows:

> Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible. An explanation of the basis for the witness's fear is likewise relevant to her credibility and is well within the discretion of the trial court.

***People v. Burgener***, 62 P.3d 1, 28 (Cal. 2003), *cert. denied*, 540 U.S. 855

(2003) (citations omitted).

The Commonwealth's argument is persuasive. Mr. Pittard attempted

to explain his reticence to identify Appellant. He testified that being labeled

a "snitch" in his neighborhood was dangerous:

> If you tell on somebody, you can't stay in that neighborhood or somebody might harm you and your family. If you're still in the same neighborhood, it is not good for you and your family.

N.T., 12/10/2013, at 158. It is also noteworthy that Mr. Pittard's reticence

persisted until he and his family received assistance relocating to another

neighborhood:

> A.    Like I was trying to explain to them the first time, get us out of that neighborhood, that was after.
>
> Q.    And the detectives were able to do that for you?
>
> A.    Yes, ma'am.
>
> Q.    And for your family?
>
> A.    Yes, ma'am, some of them.

Q.    And once they did that, that is when you decided you wanted to talk; is that right?

A. Yes, ma'am.

*Id.* at 167.

In our view, considered in this context, Mr. Pittard's reference to third-party threats merely illustrated the potential danger he faced when he agreed to identify Appellant. Such testimony was relevant to the jury's determination of Mr. Pittard's credibility. ***Buchanan***; ***Burgener***. The court's instruction provided a proper, limited context for the jury's deliberations. Thus, we agree that it was admissible, and Appellant's claim is without merit. ***Jones***.

In his second issue, Appellant contends that the Commonwealth improperly vouched for the credibility of Mr. Pittard, and thus committed prosecutorial misconduct, when it suggested during opening remarks that a "dying man's last words" were inherently reliable. ***See*** Commonwealth's Brief at 13 (quoting N.T., 12/10/2013, at 43). According to Appellant, "evaluating the credibility of witnesses is the sole province of the jury," and "it is well established that a prosecutor may not express a personal opinion about a witness's credibility." ***Id.*** (citing in support ***Commonwealth v. Tedford***, 960 A.2d 1, 31 (Pa. 2008)).

Initially, we note that although Appellant timely objected to the Commonwealth's opening statement, he requested neither a mistrial nor a curative instructive. ***See*** N.T., 12/10/2013, at 43. Accordingly, Appellant

has not properly preserved this issue, and we deem it waived. ***See***

***Commonwealth v. Jones***, 460 A.2d 739, 741 (Pa. 1983); Pa.R.Crim.P

605(b).

Absent waiver, Appellant's claim is devoid of merit. We review a claim

of prosecutorial misconduct for an abuse of discretion, focusing on "whether

the defendant was deprived of a fair trial, not a perfect one."

***Commonwealth v. Solomon***, 25 A.3d 380, 383 (Pa. Super. 2011) (quoting

***Commonwealth v. Rolan***, 964 A.2d 398, 410 (Pa. Super. 2008)). No such

deprivation occurred here. The record does not support Appellant's

assertion that the prosecutor personally vouched for Mr. Pittard's credibility.

Rather, the prosecutor merely commented on the admissibility of certain

evidence proffered by the Commonwealth. ***See*** N.T., 12/10/2013, at 43-44

(asserting that the common law has long recognized the admissibility of

dying declarations).[4] Nevertheless, a prosecutor may comment on a

witness's credibility in anticipation of an attack on it. ***See, e.g.***,

---

[4] Notwithstanding the Commonwealth's arguments to the contrary, it is unlikely that Officer Holmes' testimony regarding Mr. Pittard's initial identification of Appellant in 2009 was admissible as a dying declaration exception to the rule against hearsay. ***Commonwealth v. Griffin***, 684 a2d 589, 592 (Pa. Super. 1996) ("A statement may be considered a dying declaration, and hence admissible notwithstanding its hearsay attributes, if the declarant identifies his attacker, the declarant believes he is going to die, that death is imminent, and *death actually results*.") (emphasis added); ***see also*** Pa.R.E. 804(b)(2) (providing that a statement made under belief of imminent death is admissible *when the declarant is unavailable as a witness*). Nevertheless, the testimony was likely admissible as an excited utterance. ***See*** Pa.R.E. 803(2).

*Commonwealth v. Keaton*, 45 A.3d 1050, 1075-76 (Pa. 2012). Thus, on the merits, Appellant would be entitled to no relief.

In his third issue, Appellant contends that the trial court erred when it overruled his objection to the Commonwealth's closing argument. According to Appellant, the Commonwealth implicitly suggested to the jury that Appellant sought to intimidate witnesses, when it highlighted the presence and behavior of spectators in the courtroom. *See* Appellant's Brief at 14-16. This claim, too, is without merit. First, Appellant misstates the record: the trial court did not overrule Appellant's objection but rather denied Appellant's motion for a mistrial. N.T., 12/13/2013, at 63. Moreover, the court recognized that a cautionary instruction was appropriate. *Id.* Thereafter, the trial court instructed the jury expressly to "disregard the opinion of the prosecutor as to guests who were inside the courtroom, which is a public gallery." *Id.* at 67. The jury is presumed to follow such curative instructions. *See Commonwealth v. Jones*, 683 A.2d 1181, 1201-02 (Pa. 1996), *cert. denied*, 519 U.S. 826 (1996). Thus, Appellant suffered no prejudice, and we discern no abuse of the court's discretion. *Jones*, 683 A.2d at 1201-02; *Solomon*, 25 A.3d at 383.

In his fourth issue, Appellant contends the trial court abused its discretion when it denied his request for a *Kloiber* charge. *See Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954), *cert. denied*, 348 U.S. 875 (1954). According to Appellant, Mr. Pittard and Mr. Cox failed to

identify Appellant from a photographic array on multiple occasions, following the 2009 and 2012 incidents. Thus, according to Appellant, the trial court should have instructed the jury to view their subsequent identifications with caution. *See* Appellant's Brief at 16-17.

We review the trial court's jury instructions for an abuse of discretion. *See Commonwealth v. Leber*, 802 A.2d 648, 651 (Pa. Super. 2002). Where a witness has failed to identify a defendant on one or more prior occasions, it may be appropriate for the trial court to warn the jury that identification testimony "must be received with caution." *Kloiber*, 106 A.2d at 827. However, no cautionary instruction is required where the issue of identification relates to the credibility of a witness. **See, e.g.**, *Commonwealth v. Paolello*, 665 A.2d 439, 455 (Pa. 1995) (distinguishing between circumstances that relate to the physical ability of a witness to identify a defendant and those that relate to the credibility of a witness). Here, Appellant does not challenge the ability of Mr. Pittard or Mr. Cox to identify Appellant. Accordingly, no *Kloiber* charge was required, and we discern no abuse of the court's discretion.

Finally, Appellant contends the trial court imposed an illegal sentence when it sentenced him to 20 to 40 years' incarceration for attempted murder arising from the 2012 incident. According to Appellant, because none of the victims in the 2012 incident sustained any injuries, the maximum sentence

allowed was 20 years. *See* Appellant's Brief at 17 (citing in support 18 Pa.C.S. § 1102(c)).

Our standard of review in this regard is *de novo*. *See Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa. Super. 2013). Here, the trial court concedes its error. *See* Trial Court Opinion at 26-27. The court notes further that we may amend Appellant's sentence rather than remanding this case for a new sentencing. *Id.* at 27 (citing *Commonwealth v. Klein*, 795 A.2d 424, 430 (Pa. Super. 2002)). The trial court requests that we do so, and the Commonwealth agrees. *Id.*; *see also* Commonwealth's Brief at 31.

> According to the trial court,
>
> [h]ad [Appellant] filed a motion to reconsider [his] sentence as to the attempted murder conviction, the trial court would have amended the sentence to 10 to 20 years of incarceration for the attempted murder conviction docketed to CP-51-CR-0013417-2012. Such a sentence would have run concurrent with the other convictions on the same docket number, but consecutive to the other case docketed to CP-51-CR-0013411-2012.

Trial Court Opinion at 27. Thus, we vacate Appellant's judgment of sentence in part, solely as it relates to the length of sentence imposed for his conviction for the 2012 attempted murder, and impose an amended sentence of 10 to 20 years' incarceration as set forth above in the trial court's opinion. Appellant's amended, aggregate sentence shall be 30 to 60 years' incarceration. *See Klein*, 795 A.2d at 430.

Judgment of sentence affirmed in part and vacated in part; amended sentence imposed.

Judge Platt joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2016