J-S05032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRELL JOHNSON | : | |
| | : | |
| Appellant | : | No. 1398 EDA 2020 |

Appeal from the PCRA Order Entered June 25, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0007273-2016

BEFORE:  BOWES, J., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JUNE 30, 2021**

Darrell Johnson appeals from the order dismissing his Post Conviction Relief Act ("PCRA") petition. *See* 42 Pa.C.S.A. §§ 9541-9546. Johnson maintains that he is entitled to relief because his trial counsel was ineffective for failing to request an alibi instruction and for stipulating that he sent letters found in his girlfriend's home. We affirm.

We previously summarized the relevant facts as follows:

On August 20, 2016, at about 10:30 p.m., the victim, Anthony Gibbons, went to a bar with [Johnson's] cousin and accomplice in this crime, Latia Lofton. While they were at the bar, Lofton went in and out of the restroom multiple times, and used her cellphone to send text messages and make a phone call. When Gibbons and Lofton went outside to smoke a cigarette at Lofton's request, [Johnson] approached them with his face covered. [Johnson] was carrying a gun, and he snatched Lofton's pocketbook. [Johnson] put the gun to Gibbons' head and demanded his cellphone, keys and money. Gibbons complied, and then pulled his own gun from his car. Both men started shooting, and Gibbons was struck in his

foot and back. The bar owner called 911, and police and an ambulance responded to the scene.

Police recovered Lofton's cellphone, and downloaded and reviewed text messages from the night of the robbery indicating that she and [Johnson] planned the robbery together. One of the text messages read: "You gone [sic] see us out front. We in parking lot. Take my purse too." Lofton eventually gave a statement to police confirming her involvement in the robbery. Cell site analysis performed on [Johnson's] cellphone placed him in the general vicinity of the bar on the night of the incident. Police recovered a handgun from [Johnson's] home during a search of his residence. The gun matched the firearm used in the robbery, and DNA testing showed [Johnson's] DNA on the gun, along with two other contributors.

*Commonwealth v. Johnson*, 192 A.3d 1149, 1151 (Pa.Super. 2018) (citations omitted).

At trial, Johnson's counsel stipulated that Johnson had sent five letters that police found in Johnson's girlfriend's residence. The stipulation stated, "The letters recovered from Shonda Gelermo's home on March 16, 2017, are stipulated as being sent by the defendant." N.T., 3/23/17, at 83. The prosecution introduced the letters into evidence during the testimony of Detective Jeffrey Koch. Detective Koch read the letters to the jury. In the first letter, dated September 17, Johnson stated that he had a dream in which the true shooter of the victim came forward. *Id.* at 86-87. In the second letter, dated September 25, Johnson suggested that his girlfriend provide testimony that they were having dinner together on the night of the shooting. *Id.* at 87-89. In the third letter, dated October 11, Johnson asked his girlfriend to talk to his aunt about Latia Lofton possibly testifying against him and stated that Lofton must say that the text messages she sent were not meant for him. *Id.*

at 89-91. In the fourth letter, entitled "Xmas," Johnson asked his girlfriend to talk to Lofton to ask her not to incriminate him and to tell her that she did not know her rights when she spoke with the police. *Id.* at 91-92. In the last letter, dated March 9, Johnson gave his girlfriend advice on how to testify and told her what her testimony should be if she testified at trial. *Id.* at 95-97.

In defense, Johnson presented the testimony of his sister and brother, Zakiyha Henderson and Gregory Boyd, Jr. Henderson testified that she saw Johnson at a barbeque on the evening of the shooting. *Id.* at 109. She said that she arrived at the barbeque a little before 4:00 p.m. and stayed there until 2:00 a.m. *Id.* Henderson recalled that she first saw Johnson at the barbeque around 4:15 p.m. *Id.* at 110. She then saw Johnson a second time later at the barbeque before it was completely dark outside. *Id.* at 110-111. Henderson did not know when Johnson left the barbeque. *Id.* at 111.

Boyd also testified that he saw Johnson at the barbeque. *Id.* at 153-154. He said that he arrived at the barbeque around 4:30 p.m. and had a "nice amount of interaction" with Johnson. *Id.* at 154-155. Boyd stated that he left the barbeque around midnight and did not know whether Johnson was there when he left. *Id.* He did not recall the last time in the evening he saw Johnson. *Id.* at 156.

Johnson took the stand and testified that he arrived at the barbecue in the late afternoon and stayed there for approximately two-and-a-half hours. *Id.* at 120. He said that he then went home to change clothes and returned to the barbeque around 9:00 p.m. *Id.* at 120-121. Johnson testified that he

left the barbeque "well in the hours of almost 12:00-ish, close to that hour," and then went to his mother's house where he was living at the time. *Id.* at 122. He stated that he could not have been at the robbery because he was at the barbeque during the relevant time. *Id.* at 139.

Johnson further testified that he wrote only the letters dated September 17 and March 9, but claimed that he "fabricated" their content to "support [his] suspicions" that his letters "were being tampered with." *Id.* at 130, 143-144, 147-149. Johnson denied writing the letters dated September 25 and October 11 and the letter entitled "Xmas." *Id.* at 145-147.

At the conclusion of the trial, the jury found Johnson guilty of robbery, criminal conspiracy, aggravated assault, persons not to possess firearms, and firearms not to be carried without a license. The court sentenced him to 25 to 50 years' incarceration.

Johnson appealed and we affirmed his judgement of sentence. *Johnson*, 192 A.3d at 1151. The Pennsylvania Supreme Court denied Johnson's petition for allowance of appeal on January 11, 2019. On September 20, 2019, Johnson filed the instant PCRA petition *pro se*. The court appointed PCRA counsel, who filed an amended PCRA petition. The Commonwealth filed an answer and moved to dismiss the petition. The PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the petition without a hearing, and ultimately dismissed it on June 25, 2020. This timely appeal followed.

Johnson raises the following issues in this appeal:

1. Did the Trial Court err as a matter of law and discretion in denying [Johnson's] claim that trial counsel was ineffective for neglecting to request and preserve an Alibi Instruction (Pa.SSJI Crim. 3.11)?

2. Did the Trial Court err as a matter of law and discretion in denying [Johnson's] claim that trial counsel was ineffective for entering into numerous stipulations with the Commonwealth regarding the content and admissibility of the five letters allegedly sent by [Johnson] without first obtaining [Johnson's] approval when said stipulations were in contrast to [Johnson's] approval when said stipulations were in contrast to [Johnson's] defense and trial testimony?

3. Did the Trial Court err as a matter of law and discretion in denying [Johnson's] claim that trial counsel was ineffective for failing to conduct a colloquy with [Johnson] before agreeing to the stipulation regarding the content and admissibility of the five letters allegedly sent by [Johnson]?

4. Did the Trial Court err as a matter of law and abuse its discretion in denying [Johnson's] PCRA Petition without conducting an evidentiary hearing on the issues that were made known to the Trial Court in [Johnson's] PCRA?

Johnson's Br. at 4-5.

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Presley**, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

Johnson's issues involve claims of ineffectiveness of trial counsel. "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim is of

arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). Prejudice in this context means that "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." ***Commonwealth v. Velazquez***, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1106 (Pa. 2012).

Johnson's first issue is that the PCRA court erroneously denied his claim that trial counsel was ineffective for failing to request an alibi instruction. Johnson's Br. at 17. He contends that he presented an alibi defense through the testimony of two witnesses, Zakiyha Henderson and Gregory Boyd, Jr., as well as his own testimony that he was at the barbeque and then went home to his mother's house during the time the shooting occurred. ***Id.*** at 21, 23. Johnson concludes that "[e]ven if [t]rial [c]ounsel felt that the alibi testimony was not the strongest, he should have requested an [a]libi [i]nstruction as it would have advanced his [] defense." ***Id.*** at 25-26.

"An alibi is a defense that places a defendant at the relevant time at a different place than the crime scene and sufficiently removed from that location such that it was impossible for him to be the perpetrator." ***Commonwealth v. Sileo***, 32 A.3d 753, 767 (Pa.Super. 2011) (citation omitted). "Where [alibi] evidence has been introduced, a defendant is entitled to an alibi instruction to alleviate the danger that the jurors might

- 6 -

impermissibly view a failure to prove the defense as a sign of the defendant's guilt." **Commonwealth v. Bryant**, 855 A.2d 726, 741 (Pa. 2004) (citation omitted). Nevertheless, an alibi instruction "is required only in cases where a defendant's explanation places him at the relevant time at a different place than the scene involved and so far removed therefrom as to render it impossible for him to be the guilty party." **Commonwealth v. Collins**, 702 A.2d 540, 545 (Pa. 1997).

Here, the PCRA court concluded that Johnson could not prove prejudice because the evidence supporting Johnson's alibi was weak and the evidence against him was overwhelming. PCRA Court Opinion, filed Sept. 4, 2020, at 9. The court pointed out that since the police were called to the scene around 11:35 p.m., and neither Henderson nor Boyd knew when Johnson left the barbeque, their testimony did not support an alibi defense. **Id.** The court further observed that Johnson did not testify that he was at the barbeque at 11:35 p.m.; rather, he stated that he left the barbeque at "almost 12:00-ish[, close to that hour.]"[1] **Id.** On the other hand, the court found that there was overwhelming evidence that placed Johnson at the scene of the robbery, including accomplice testimony and cell site analysis evidence. **Id.**

The PCRA court did not err. The only support for Johnson's claimed alibi was his own testimony, which the jury would likely have viewed as self-serving, and he did not even clearly state in his testimony that he was at the

---

[1] **See** N.T., 3/23/17, at 122.

barbecue at the relevant time. In contrast, the evidence that he was the perpetrator was strong. That evidence included: Lofton's testimony that Johnson planned the robbery with her; text messages between Lofton and Johnson; the fact that Johnson gave Lofton $300 shortly after the robbery; cell site analysis that placed Johnson in the general vicinity of the bar on the night of the incident; a handgun recovered from Johnson's home that matched the firearm used in the robbery; and evidence that Johnson's DNA was found on the gun. We cannot say that the PCRA court erred in concluding that Johnson's allegations were insufficient to undermine confidence in the verdict. The court properly dismissed this claim.

Johnson's next issue is that the court erred in denying his claim that trial counsel was ineffective for "entering into numerous stipulations" regarding "the content and admissibility of the five incriminating letters allegedly sent by [Johnson] without first obtaining [Johnson's] approval when said stipulations were in contrast to [Johnson's] defense and trial testimony." Johnson's Br. at 17. Johnson maintains that counsel never consulted with him before trial regarding the stipulation and that he told counsel prior to trial that he did not write all five letters. *Id.* at 32-33. Johnson further contends that he was unsure whether he was going to testify, but "after hearing the stipulation and the letters read in court, [he] felt obligated to take the stand and testify at trial that he did not send all five of these letters, which testimony was contrary to the stipulation agreed to by his own attorney." *Id.* at 33. He

argues that this undermined his credibility since his testimony that he did not write all five letters was contrary to the stipulation. *Id.* at 35-37.

Johnson mischaracterizes the stipulation. There was only one stipulation about the letters, and it was that Johnson sent them. The purpose of the stipulation was to address authentication. *See* Pa.R.E. 901. There was no stipulation about the "content" of the letters.

The PCRA court rejected this claim on the ground that the stipulation did not prejudice Johnson, as the letters were admissible even in the absence of the stipulation. We agree. There was sufficient evidence to authenticate the letters circumstantially without the stipulation. For evidence to be admissible, it must be properly authenticated. Pa.R.E. 901(a); *see Commonwealth v. Talley*, 236 A.3d 42, 59 (Pa.Super. 2020). To achieve authentication, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. Pa.R.E. 901(a). Such evidence can be purely circumstantial evidence. Pa.R.E. 901(b). In *Commonwealth v. Collins*, 957 A.2d 237, 266 (Pa. 2008), the Pennsylvania Supreme Court found circumstantial evidence sufficient to authenticate letters. There, the letters bore defendant's name and return address, used his prison identification number, and contained subject matter – including addressing the recipient by nicknames and referring to trial strategy – linking the letters to the defendant.

Although not identical to the evidence in *Collins*, the circumstantial evidence here was sufficient to authenticate the letters. The letters were found at Johnson's girlfriend's home and they used language that one would use

with a paramour, such as addressing the recipient as "baby." The letters discussed aspects of Johnson's case and suggested testimony that would be favorable to Johnson. The letters also discussed conversations he had with his lawyer and testimony Lofton could give if she cooperated with police. One of the letters was signed "Darrell." These circumstances are sufficient, when considered in their totality, to authenticate the letters.

Furthermore, even if the letters were not in evidence, the evidence of Johnson's guilt was quite strong, including inculpatory testimony from his co-conspirator, Lofton, and the text messages between the two setting up the attack. Johnson has not shown that but for the stipulation, there is a reasonable probability the outcome of the trial would have been different. Thus, Johnson has failed to establish prejudice and the PCRA court properly dismissed this claim.

Johnson's third issue is that the trial court erred in rejecting his claim that counsel was ineffective for failing to conduct a colloquy with Johnson before agreeing to the stipulation regarding the letters. Johnson's Br. at 34. Johnson points to precedents stating that a colloquy is necessary "any time a defendant stipulates to evidence that virtually assures his conviction because such a stipulation is functionally the same as a guilty plea." *Id.* at 35 (quoting *Commonwealth v. Eichinger*, 108 A.3d 821, 832 (Pa. 2014)).

Johnson's argument fails because the stipulation that the letters were sent by Johnson was not "functionally the same as a guilty plea." Rather, the letters were just one piece of evidence that the jury considered in finding

Johnson guilty. Indeed, as explained above, there was an abundant evidence of guilt independent of the letters.

Johnson's final issue is that the PCRA court erred in denying his petition without holding a hearing. Johnson's Br. at 37. Johnson argues that there were genuine issues of material fact regarding his claims. *Id.* at 38-40.

A PCRA petitioner does not have an absolute right to a hearing. ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa.Super. 2008). A PCRA court may decline to hold a hearing if it determines that there are no genuine issues of material fact, the defendant is not entitled to PCRA relief, and no purpose would be served by any further proceedings. ***See*** Pa.R.Crim.P. 907(1). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." ***Commonwealth v. Hanible***, 30 A.3d 426, 438 (Pa. 2011) (citation omitted) (alteration in original).

We find no error in the PCRA court's decision to decline to conduct an evidentiary hearing. All of Johnson's claims involved ineffective assistance of counsel and the PCRA court was able to determine that even taking Johnson's factual allegations as true, Johnson could not meet at least one of the prongs of the ineffectiveness test. ***See Jones***, 942 A.2d at 906.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/30/2021