Commonwealth *v.* Carr, Appellant.

Argued September 30, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Robert N. Spaeder,* with him *James F. Toohey,* for appellant.

*Richard D. Agresti,* Assistant District Attorney, with him *William E. Pfadt,* District Attorney, for Commonwealth, appellee.

126

OPINION BY MR. JUSTICE O'BRIEN, November 11, 1969:

This is an appeal by Melvin Carr from the judgment of sentence of the Court of Oyer and Terminer of Erie County. Appellant, after a trial by jury, was found guilty of second degree murder, and after denial of his post-trial motions, was sentenced to a term of seven and one-half to fifteen years' imprisonment.

The facts of this case are set forth in our opinion, decided this date, affirming the conviction of appellant's codefendant, Royall Collins, 436 Pa. 114, 259 A. 2d 160 (1969).

Appellant's counsel, like Collins', are very able, and have urged numerous points upon appeal. First of all, appellant contends that the evidence was insufficient to support the verdict, and that the court should have granted his demurrer. We rejected this contention on virtually the same evidence in *Collins* and we do so here. Stanyard, the principal, testified that he pointed the gun at the deceased, and fired in the air. The witnesses who immediately appeared found the victim lying on the floor dying of a gunshot wound. The fact that Stanyard never testified that he shot directly at the deceased, but rather fired in the air, hardly prevents there being enough evidence upon which to convict. This is the strongest possible circumstantial evidence.

Appellant raises two more issues that were dealt with at length in *Collins* and need not be dwelt upon here. The issue of Stanyard's competency is one. The second is the effect of the line-up at which Stanyard identified Carr.

Appellant, like Collins, also complains of the admission of a statement he made to interrogating officers. However, the evidence reveals that Carr was fully advised of the charges against him and his rights un-

der *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), before he made the statement. Moreover, his statement, like Collins', comported with his testimony at trial and was not prejudicial in any event. *Com. ex rel. Adderley v. Myers*, 418 Pa. 366, 211 A. 2d 481 (1965).

Several other of Carr's contentions deal with alleged errors in the admission of evidence. One claim is that the court below erred in allowing Stanyard to testify as to why he wrote a letter in jail, which letter exonerated Carr. On cross-examination, Stanyard was confronted with the letter. On redirect, he was permitted to testify that the letter had been induced by Collins' threats against his family. Appellant urges that the admission of this explanation was inconsistent with the general rule that: "Threats by third persons against public officers or witnesses are not relevant unless it is shown that the defendant is linked in some way to the making of the threats. Thus, evidence that a witness received an unsigned letter of a threatening nature should be excluded when there is no evidence to connect the accused with it." Wharton Criminal Evidence, §208 (12th Ed.); *Commonwealth v. Banker*, 211 Pa. Superior Ct. 430, 432, 236 A. 2d 530 (1967) (dissenting opinion of HOFFMAN, J.).

However, that rule refers to the relevance of a threat as it bears upon the issue of guilt. Here, the purpose was not to establish guilt, but to explain a prior inconsistent statement, a permissible use which even the dissent in *Banker* acknowledges. Here there was no danger that the jury would treat the threat explanation as relevant to Carr's guilt, because the threats were not anonymous, but rather emanated from Collins. If Carr was of the view that the jury would be inclined to consider this threat as relevant to the issue of his guilt, an eventuality which we consider

highly unlikely, he could have requested the court to give a cautionary instruction. Having failed to do so, he has no legitimate complaint about the admission of this evidence, clearly relevant to explain the prior inconsistent statement.

Another allegation of error in the admission of evidence concerns the testimony of police officer Lupo. Officer Lupo testified that in the early morning (approximately 1:45 A.M.) of April 27, 1967, shortly before the hour at which the murder was committed, he saw not far from the scene of the murder an automobile containing four persons, one white and three black, two of whom he could identify as Stanyard and Collins. Appellant urges that this testimony was irrelevant and thus inadmissible because Officer Lupo could not identify him. We do not agree. The prosecution's theory was that the four boys remained together throughout the evening's escapades; the defense's story was that Carr had separated from the others. Officer Lupo's testimony was clearly relevant to support the Commonwealth's theory. While of course it is possible that Carr left the group and another joined it, it is for the jury to assess that possibility.

Finally, on admission of evidence, Carr contends that it was error to allow Officer Lupo's testimony to be corroborated by Officers Muth and Podbielski. Both of these officers testified that at approximately 2:00 A.M. on April 27, 1967, Lupo had given a description and license number of the blue and white Chrysler in which he testified he saw Stanyard, Collins, and two other blacks. Carr claims that Lupo's statements as related by the other officers are hearsay and thus inadmissible, citing Henry, Pennsylvania Evidence, Vol. 1, page 24: "As a general rule, declarations made by a witness at another time, though admissible to contradict him, are not competent to confirm or corroborate

his present testimony. Such declarations are mere hearsay, and furthermore to admit them would permit a party to manufacture evidence for himself by making declarations to third persons. . ." Appellant does recognize that exceptions to this general rule exist. "Such declarations are mere hearsay and are not admissible, unless used to rebut testimony offered to impeach the witness by showing inconsistent statements or that the testimony given by the witness is a recent fabrication." *Commonwealth v. Rothlisberger,* 197 Pa. Superior Ct. 451, 454, 178 A. 2d 853 (1962). However, appellant claims that neither exception is applicable here.

The court below permitted the rehabilitation on the ground that Carr had produced a commercial photographer who testified as to the limited light power available at the intersection where Lupo had allegedly seen the car, and thus had impeached Lupo's testimony by attempting to show that he could not have seen the license number of the automobile or its occupants. However, it is not every impeachment that permits rehabilitation by virtue of prior consistent statements. They cannot be admitted where the witness is impeached by contradiction, or, more specifically, as here, by a showing of the implausibility of his testimony. "When B is produced to swear to the contrary of what A has asserted on the stand, it cannot help us, in deciding between them, to know that A has asserted the same thing many times previously. If that were an argument, then the witness who had repeated his story to the greatest number of people would be the most credible." IV Wigmore (3d Ed.), §1127.

Nonetheless, although not admissible for the reason the court below thought, the controverted evidence was admissible. As stated above, one of the exceptions to the hearsay rule on prior consistent statements is to rebut an implication of recent fabrication. Officer

Lupo was cross-examined regarding his having seen the automobile between the April 27, 1967, date and the trial: "Q. Officer, you have gone up and taken a look at this car since Mr. Collins was picked up, haven't you? A. I have seen it several times down in the basement. Q. In other words, it was taken into custody by the police, wasn't it? A. Right. Q. And you had an opportunity to take a good look at it after the car was picked up sometime after April 27th or 8th, isn't that right? A. Right." Whether deliberately or not, appellant may well have implanted an idea of recent fabrication in the mind of the jury. Under these circumstances, we cannot say that the court erred in admitting the testimony of Officers Muth and Podbielski. The court was careful to charge that their testimony was not offered to prove the truth of what Lieutenant Lupo said, but merely to show that he had on a prior occasion made a consistent statement.

Appellant's final three allegations of error deal with the court's charge. One complaint is that the court misstated the facts in telling the jury that "Stanyard stated that the defendant, Melvin Carr, did aid in planning and carrying out the robbery of the Fytikas restaurant." This portion of the charge was not error, for it relates the actual state of affairs. Although Stanyard was unable to specify just what each of his three cofelons said, he did testify clearly that all four of them aided in the planning and carrying out of the robbery.

Next, appellant argues that the court's charge was unsatisfactory with regard to the Commonwealth's burden of establishing the guilt of the principal, Stanyard, beyond a reasonable doubt, before the jury could consider the guilt of the accessory, Carr. We cannot agree. The court instructed the jury: "However, you must first determine the guilt and the degree of guilt

in a sense of Norman Stanyard." Appellant contends that the court erred in inserting the "in a sense" and in omitting any reference to reasonable doubt. We find no error in either respect. The jury was indeed only determining Stanyard's guilt "in a sense"; he was not on trial, and they would bring back no verdict with regard to him. As for reasonable doubt, the court in another portion of the charge made it perfectly clear that the jury, to find guilt, must be convinced beyond a reasonable doubt.

Lastly, appellant complains of the court's refusal of several of his points for charge. These points, dealing with (1) the involvement necessary for the guilt of an accessory, (2) the danger of accomplice testimony, and (3) Stanyard's credibility, were all incorporated into the court's general charge and were thoroughly covered therein.

The judgment of sentence is affirmed.

Mr. Chief Justice BELL, Mr. Justice EAGEN, Mr. Justice ROBERTS and Mr. Justice POMEROY concur in the result.