J-S74011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEITH POWELL | : | |
| | : | |
| Appellant | : | No. 3447 EDA 2018 |

Appeal from the PCRA Order Entered October 23, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013247-2009

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MARCH 06, 2020**

Appellant, Keith Powell, appeals from the order denying his timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

The PCRA court provided the following summary of the facts adduced at Appellant's trial:

> On March 14, 2009, Appellant was sitting in his car outside of Sidekicks Bar located at 2nd Street and Susquehanna Avenue in Philadelphia, when the [victim], Juan Carroll, arrived on the scene with Juan Brown and other friends.  [The victim] and Appellant's encounter escalated into an argument which was diffused by Brown.  Thereafter, Brown walked a short distance, heard [the victim] and Appellant reengage and quickly returned to the scene. There, Brown witnessed the [victim] backing up towards a nearby gate with his hands up and Appellant pointing and shooting a black revolver at the unarmed [victim].  After the shooting[, the victim]

---

[*] Former Justice specially assigned to the Superior Court.

ran a short distance on 2nd Street while Appellant got into his car and fled.

Police arrived at the scene of the shooting and found [the victim] lying on the sidewalk with a gunshot wound to the upper left part of the chest. The Medic Unit arrived shortly thereafter, treated [the victim], and transported him to Temple Hospital. [He] was conscious and asked paramedics whether he was going to live or die. Throughout this exchange, [the victim] implicated Appellant ("Shine") as the person [who] shot him. Brown, who remained on the scene, and Jalissa Gonzalez, [the victim]'s girlfriend who was on the phone with [the victim] along with his mother, Zelma Carroll, overheard him tell those who were helping him that "Shine shot me." [The victim]'s mother and Gonzalez came to the hospital where [he] again stated to them that Appellant shot him. [The victim] succumbed to his injuries at the hospital, and his death was determined to be homicide from gunshot wounds.

PCRA Court Opinion (PCO), 5/29/19, at 2-3.

Following a multi-day jury trial held in November of 2011, Appellant was convicted of third-degree murder and possessing an instrument of crime (PIC). On February 8, 2012, the trial court sentenced Appellant to 20-40 years' incarceration for third-degree murder, and a consecutive term of 2-4 years' incarceration for PIC. Appellant filed a timely notice of appeal. This Court affirmed his judgment of sentence and our Supreme Court denied further review. *Commonwealth v. Powell*, 87 A.3d 889 (Pa. Super. 2013) (unpublished memorandum), *appeal denied*, 87 A.3d 815 (Pa. 2014).

Appellant filed a timely, *pro se* PCRA petition on March 23, 2015. Counsel was appointed to represent him on October 8, 2015. Appellant thereafter filed amended PCRA petitions on June 6, 2016, June 27, 2016, and November 28, 2017. On August 28, 2018, the trial court issued notice of its intent to dismiss the PCRA petition without a hearing pursuant to Pa.R.Crim.P.

907(1). Subsequently, the trial court dismissed Appellant's petition by order dated October 23, 2018, and Appellant filed a timely notice of appeal on November 26, 2018.

Appellant now presents the following question for our review:

Did the Honorable PCRA [c]ourt err when it denied relief without holding a PCRA hearing?

Appellant's Brief at 3.

Appellant's statement of the questions presented dramatically misses the mark in identifying the numerous individual issues raised in his appeal. The Argument section of his brief proceeds to offer no less than thirteen distinct ineffective assistance of counsel (IAC) claims for our consideration.[1] On this basis alone, this Court could deem all such claims waived. *See* Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. *No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby*.") (emphasis added).

---

[1] Appellant presents two unique IAC claims in the Argument section of his brief that precede his treatment of issues A-M. The first is regarding trial counsel's failure to request a mistrial due to the prosecutor's referencing pre-arrest silence, and the second concerns counsel's failure to request a cautionary instruction for the same. Thus, in reality, Appellant presents numerous unique IAC claims for our review.

However, because Appellant was denied a PCRA hearing to develop these claims, he only suggests relief in the form of a remand for the PCRA court to conduct such a hearing. For this reason, and out of an abundance of caution, we overlook the otherwise fatal error in Appellant's Statement of the Questions Involved.

> We review an order dismissing a petition [filed] under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (internal citations omitted).

> Generally speaking,
>
> [t]o prevail on a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011). The arguable merit prong asks, "whether the disputed action or omission by counsel was of

***questionable*** legal soundness." ***Commonwealth v. Davis***, 541 A.2d 315, 318 (Pa. 1988) (emphasis added).

> With regard to the second, reasonable basis prong, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." We will conclude that counsel's chosen strategy lacked a reasonable basis only if [the a]ppellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. "We stress that boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective."

***Chmiel***, 30 A.3d at 1127–28 (citations omitted).

As context for Appellant's IAC claims, it was undisputed at trial that he shot and killed the victim. Appellant's Brief at 4. Thus, the only questions before the jury were whether Appellant acted in self-defense or, similarly, whether he acted with a *mens rea* that was incompatible with murder. Appellant concedes that the jury heard testimony "that [he] had a gun in his hand and shot the victim[,]" that the "victim was backed up against an iron grate or wall[,]" and that the "victim was, apparently, unarmed." ***Id.*** at 4. However, Appellant testified that "it was the victim who had the only weapon involved and that, after a scuffle, the gun fell on the ground" and he picked it up. ***Id.*** at 5. "Shortly thereafter, and because of fear, and passion aroused," Appellant "claims that he fired one shot, killing the victim." ***Id.*** Thus, Appellant asserts that the primary issue at trial was his credibility. Most of

- 5 -

Appellant's IAC claims are directed toward trial counsel's ostensible failure to protect him from the prosecutor's attacks on the credibility of his self-defense claim.

Appellant's first IAC claim concerns the prosecutor's attempts to "mak[e] it seem as if [Appellant] had a burden to go to the police and report the incident" if, in fact, he believed he was acting in self-defense. *Id.* at 9. However, it is clear that Appellant's attorney objected to the attempts by the prosecutor to use Appellant's pre-arrest silence against him, and Appellant concedes as much by citing precisely to where defense counsel objected. *Id.* at 9; *see also* N.T., 11/18/11, at 85-86. This prompted the trial court to caution the prosecutor to tread carefully or else risk a mistrial. N.T., 11/18/11, at 86. Appellant contends that this was not enough, and that counsel should have requested a mistrial and/or a cautionary instruction. Appellant's Brief at 10. Appellant claims he was "unconstitutionally tarnished" by the prosecutor's questions. *Id.* at 11.

However, Appellant utterly fails to develop his claim to establish that any of the prosecutor's questions potentially infringed upon his constitutional rights. In *Griffin v. California*, 380 U.S. 609 (1965), the Supreme Court held that the Fifth Amendment right against self-incrimination precludes a prosecutor or judge from commenting on a defendant's failure to testify at trial. Subsequently, in *Doyle v. Ohio*, 426 U.S. 610 (1976), the *Griffin* rule was extended to prohibit a prosecutor from impeaching a testifying defendant with his post-arrest, post-*Miranda* silence, where the defendant offered an

- 6 -

explanation for his actions on the night in question for the first time during his testimony. **See Doyle**, 426 U.S. at 618 (holding "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial").

However, in **United States v. Robinson**, 485 U.S. 25 (1988), the Supreme Court ruled that references to a defendant's failure to testify at trial did not violate the Fifth Amendment right recognized in **Griffin**, in circumstances where the prosecutor was fairly responding to the arguments of defense counsel. In that case, the defense claimed that the Government had never allowed the defendant to explain his side of the story, despite his decision not to testify. The prosecutor then told the jury that Robinson "could have taken the stand and explained it to you." **Robinson**, 485 U.S. at 26. Thus, the right expressed in **Griffin** is a qualified right that can be effectively waived when exploited by the defense. Subsequently, in **Commonwealth v. Bolus**, 680 A.2d 839 (Pa. 1996), the Supreme Court of Pennsylvania held "that when a criminal defendant waives his right to remain silent and testifies at his own trial, neither the United States nor the Pennsylvania Constitution prohibit a prosecutor from impeaching a defendant's credibility by referring to his pre-arrest silence." **Id.** at 844. In other words, the **Griffin** right only applies when a defendant actually asserts his right not to testify.

The Commonwealth argues that Appellant "testified that he was the victim of a crime. The prosecutor merely asked why [he] had failed to report the alleged crime in order to impeach his testimony[,]" in accordance with

- 7 -

*Bolus*. We agree with the Commonwealth. Not only does this case involve Appellant's pre-arrest silence, for which minimal if any constitutional protection applies, but Appellant also took the stand in his own defense, thereby waiving the protections of the *Griffin* rule.[2] Accordingly, there was no reasonable basis for defense counsel to seek a mistrial or a cautionary instruction based upon Appellant's Fifth Amendment right to remain silent. No such right applied in the circumstances of this case. Appellant did not remain silent, thereby waiving the protections that stem from that right.

Appellant further argues that the prosecutor attempted to imply to the jury that Appellant had some legal obligation to go to the police if he were the victim. However, Appellant fails to develop this argument in any meaningful manner by citation to legal authorities suggesting that such questioning was inappropriate. Appellant cited *Commonwealth v. Greco*, 350 A.2d 826 (Pa. 1976), but that case involved post-arrest silence, and is therefore not applicable here. Accordingly, we conclude that Appellant's first (or first two) IAC claim(s) lacks merit.

_____

[2] We note that this Court has held that use of a defendant's pre-arrest silence is unconstitutional in limited circumstances. *See Commonwealth v. Molina*, 33 A.3d 51 (Pa. Super. 2001) (*en banc*) (holding that the Commonwealth cannot "urge the jury to use a non-testifying defendant's pre-arrest, pre-*Miranda* silence as substantive evidence of guilt") (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). However, Appellant testified in this case and, therefore, cannot avail himself of the protection offered by *Molina*.

**A**[3]

Next, Appellant claims that defense counsel should have objected when a police officer testified to hearsay regarding Jalissa Gonzalez's statement that she was on the phone with the victim when he was shot. Appellant is not entitled to relief.

This claim is poorly developed, and contains no citations to pertinent legal authorities beyond mention of boilerplate case law that is not discussed by Appellant in any meaningful fashion. *See* Appellant's Brief at 11-12. This issue constitutes only two half-pages of Appellant's argument, half of which is merely a quotation from the trial transcript. On this basis alone, we could deem the issue waived. *See Commonwealth v. Treiber*, 121 A.3d 435, 464 (finding waived cursory IAC claims that were not developed "in any meaningful fashion capable of review").

In any event, Appellant could not have been prejudiced by the hearsay statement. First, the statement averred that the victim was on his cellphone with Ms. Gonzalez when he was shot. This does not appear to conflict with Appellant's theory of the case (that he shot the victim in self-defense) and, in any event, Appellant fails to explain how it did conflict with that theory. Appellant's argument also fails to acknowledge that Ms. Gonzalez testified at trial and, therefore, was available for cross-examination regarding the truth

___

[3] From this point forward, we address the numerous IAC claims in Appellant's Brief as they are designated therein, "A-M." Appellant did not designate his first IAC claim under a lettered heading.

of the matter contained in the hearsay statement. Indeed, as noted by the Commonwealth, this hearsay testimony was later used by defense counsel to impeach Ms. Gonzalez's testimony. *See* N.T., 11/16/11, at 92. Moreover, Appellant implies that the statement was offered *against* him, whereas the officer's answer was directly solicited by defense counsel during cross-examination in an apparent attempt to create groundwork for the subsequent impeachment of Ms. Gonzalez. *See* N.T., 11/16/11, at 54 ("Jalissa actually told you that she was on the cell phone with the decedent when he was shot, correct?"). Accordingly, Appellant was not prejudiced by the admission of this hearsay statement, even assuming it was inadmissible. As such, trial counsel's failure to object did not prejudice Appellant.

**B**

Next, Appellant argues that defense counsel should have objected to the prosecutor's question, "What did they do after [Appellant] fired that shot in the chest of Juan?" Appellant's Brief at 12. Appellant fails to argue how he was prejudiced by this question beyond a boilerplate assertion that it "assumed a fact not in evidence." *Id.* Moreover, Appellant's entire argument is set forth over one-half of one page, which includes his citation from the transcript. This claim has not been developed sufficient for meaningful review and, therefore, we deem it waived.[4] *See Treiber*, *supra*.

---

[4] Even if we were to reach the merits of this claim, Appellant would not be entitled to relief. Appellant concedes the fact that he shot the victim, ostensibly in self-defense. It is unclear how Appellant was prejudiced by a reference to a fact that was part-and-parcel of his self-defense claim.

## C

In Appellant's next claim, he asserts that defense counsel should have objected during the following direct-examination of Detective Griffin:

QUESTION: What information did [Juan Brown] add to the case, did he add to the investigation of your case?

ANSWER: Mr. Brown added an eyewitness description of the incident and eyewitness account of it….

QUESTION: And did his testimony in any way contradict the fact that [Appellant] was the only one that had any sort of weapon?

ANSWER: No.

Appellant's Brief at 12 (citing N.T., 11/17/11, at 54).

The entirety of Appellant's argument regarding this exchange is as follows:

The Officer being questioned was testifying to hearsay information. He was actually saying what Mr. Brown said. Moreover, whether [Appellant] was the only one that had any sort of weapon was for the jury to determine and not for the Officer's interpretation of Mr. Brown's testimony. The Officer was allowed to reach an impermissible conclusion. Thus, counsel should have objected.

*Id.* at 13.

Again, Appellant provides no case law to support his claim. He also fails to specifically argue how he was prejudiced by the admission of this testimony. Juan Brown testified at trial as an eyewitness and, thus, he was available for cross-examination regarding any statements he made to police. Any generalizations about Mr. Brown's observations offered by Detective Griffin were merely cumulative of Mr. Brown's in-court testimony and, therefore,

Appellant was not prejudiced, even if the above exchange technically constituted inadmissible hearsay. *See Commonwealth v. Hardy*, 918 A.2d 766, 777 (Pa. Super. 2007) (holding that where "hearsay testimony was merely cumulative of the untainted, properly admitted and substantially similar testimony" of a witness who had made the out-of-court statement, admission of the hearsay testimony was "harmless error"). Consequently, Appellant was not prejudiced by trial counsel's failure to object.

**D**

Next, Appellant asserts that trial counsel should have objected when Detective Griffin was asked, during direct-examination, whether "it was ever explained to him" that Appellant "was merely a victim in this whole thing." N.T., 11/17/11, at 60. Detective Griffin answered, "No, not at all." *Id.*

Appellant argues this was "completely irrelevant" and therefore inadmissible under Pa.R.E. 401.[5] Appellant's Brief at 13. However, whether or not Appellant was a victim who acted in self-defense, or the perpetrator of a murder, is not only relevant, it was the heart of the matter at issue at trial according to Appellant's own characterization of the nature of this case. This is especially true since Appellant testified at trial and, thus, his credibility was

---

[5] That rule provides that evidence is relevant if "it has **any** tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b) (emphasis added).

directly at issue. Therefore, the lack of corroboration for Appellant's claim of self-defense was a matter that was relevant in assessing his credibility.

Appellant also asserts that this evidence was more prejudicial than probative, and therefore inadmissible under Rule 403.[6]  *Id.*  Appellant provides a single boilerplate citation for this proposition, with no accompanying analysis.  Accordingly, we deem this issue waived due to Appellant's failure to develop it in a meaningful fashion.  **See Treiber, supra**.

## E

Appellant's next claim concerns trial counsel's failure to seek a mistrial based on various references to Appellant's pre-arrest silence, some of which trial counsel objected to, but, other times, he did not.  As discussed above, the admission of evidence of Appellant's pre-arrest silence was not improper.  Evidence of pre-arrest silence is admissible if used to challenge a testifying defendant's credibility.  **See Jenkins v. Anderson**, 447 U.S. 231 (1980) (holding that "the Fifth Amendment is not violated by the use of pre[-]arrest silence to impeach a criminal defendant's credibility").  Accordingly, defense counsel's failure to request a mistrial based on numerous references to Appellant's pre-arrest silence was not prejudicial.  This claim lacks merit.

## F

---

[6] That rule provides that the trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Pa.R.E. 403.

Appellant also posits that trial counsel was ineffective because he "did not present testimony that [Appellant] knew of the arrest of the victim … for [a]ttempted [m]urder." Appellant's Brief at 14. Yet again, Appellant fails to meaningfully develop this claim for our review. Appellant's entire argument consists of a single sentence. Accordingly, we deem this issue waived. *See Treiber, supra*. Appellant also asserts, in a single sentence, that the trial court should not have sustained the Commonwealth's objection to the introduction of the victim's prior record through the testimony of Mr. Brown. *See* N.T., 1/16/11, at 160. This claim is also waived due to Appellant's failure to develop it sufficiently for meaningful review. *See Treiber, supra*.

## G

In his next IAC claim, Appellant asserts that trial counsel provided ineffective assistance by failing to ask Appellant about the victim's tattoos, which purportedly read, "Fuck You" and "Not Nice." Appellant asserts that "Pennsylvania law allows evidence of the acts of a victim and[] getting a tattoo is an act. This would have helped show the violent character of the victim." Appellant's Brief at 15. Appellant's argument consists of a quarter-page of analysis, and no citations to any relevant case law. This issue is waived on that basis. *See Treiber, supra*.

In any event, it is true that in

a trial for homicide, where self-defense is asserted, the defendant may introduce evidence of the turbulent or dangerous character of the decedent. *Commonwealth v. Tiffany*, … 15 A. 462 ([Pa.] 1888). This type of character evidence is admissible on either of two grounds: 1) to corroborate the defendant's alleged knowledge

- 14 -

of the victim's violent character in an effort to show that the defendant reasonably believed that her life was in danger; and/or 2) to prove the allegedly violent propensities of the victim to show that the victim was in fact the aggressor.

***Commonweatlh v. Dillon***, 598 A.2d 963, 964–65 (Pa. 1991).

However, tattoos, especially ones that, on their face, do not suggest a propensity for or advocacy of violence, are not strong indicators of violent character. Additionally, Appellant has provided no analysis to suggest otherwise. Furthermore, the victim's tattoos bear little relation to the propensity-for-violence evidence at issue in ***Dillon***. ***Id.*** at 964 (describing the propensity evidence as proposed testimony by the self-defense-claiming defendant's son that, based on his personal observations, the victim had a tendency to become "mean and vicious" when drinking).

Moreover, in the instant case, Appellant was permitted to testify that the victim had threatened him "many times" in the past. N.T., 11/18/11, at 46. He was also permitted to testify the victim had previously threatened to put him "in a box[,]" which Appellant understood to mean that the victim had threatened to kill him. ***Id.*** at 47. As such, we are unconvinced that evidence of the victim's tattoos would have successfully corroborated Appellant's claim of self-defense to such a degree that calls into question the jury's verdict, even if those tattoos vaguely suggested a propensity for violence. Accordingly, even if not waived, we would deem this issue meritless, as we ascertain little potential prejudice stemming from trial counsel's failure to ask Appellant about his knowledge of the victim's tattoos.

**H**

- 15 -

Appellant next argues that:

The record reflects that evidence was introduced by the Prosecutor tending to demonstrate that people friendly with, or related to [Appellant], menaced one of the witnesses. That evidence is inadmissible unless it can be shown that [Appellant] himself authorized or requested this or if the evidence is needed to explain why a witness changed his/her story. ***See Commonwealth v***[]***. Collins***, 702 A.2d 540 (Pa. 1997) [(]citing ***Commonwealth v***[]***. Carr***, 259 A.2d 165 (Pa. 1969)[)]. Since neither condition existed during the trial here, it was error on part of defense counsel to refrain from objecting.

Appellant's Brief at 15. Mr. Brown did testify that he had received threats due to his cooperation with the Commonwealth in the prosecution of Appellant. ***See*** N.T., 1/16/11, at 144-45. Appellant's trial counsel did not object. ***Id.***

The Commonwealth argues that ***Collins*** is distinguishable from the circumstances present in this case. In ***Collins***, our Supreme Court stated that "threats against a witness are not admissible as an admission of guilt against the accused unless the accused is linked in some way to the making of the threat." ***Collins***, 702 A.2d at 544. Such evidence is also admissible to show a witness's motive to testify untruthfully due to such threats. ***Id.***

The Commonwealth contends that Appellant was "sufficiently linked" to the source of the threats to Mr. Brown. Commonwealth's Brief at 26. Appellant argues that, to be admissible, the evidence must show that he "authorized or requested" the threats. Appellant's Brief at 15. However, the ***Collins*** decision is not so narrow in scope. It only requires that a defendant be "linked in some way" to the threat, not that he directly authorized it. ***Collins***, 702 A.2d at 544. Thus, we agree with the Commonwealth that the

standard set forth in **Collins** for admission of such evidence is lower than that characterized by Appellant. Moreover, the record reveals that Mr. Brown testified specifically as to the individuals who had threatened him, and their relationship to Appellant. **See** N.T., 11/16/11, at 139-40. Appellant presents no argument regarding how that testimony was insufficient to establish Appellant's link to the sources of the threats. Accordingly, we conclude that the evidence of threats to Mr. Brown was admissible and, therefore, Appellant's claim that trial counsel should have objected to such evidence is meritless.

### **J**[7]

Next, Appellant asserts that it was error for a police officer to testify about the threats, and error for the prosecutor to refer to such evidence during his closing argument. This claim suggests error by the trial court, which should have been raised, if at all, during Appellant's direct appeal. Appellant does not argue that trial counsel erred by failing to object, or that direct appeal counsel was ineffective for failing to raise such claims on direct appeal. Accordingly, this issue is waived. **See** 42 Pa.C.S. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.").

---

[7] Appellant skipped the letter "I" in the argument section of his brief. To avoid confusion, we retain Appellant's lettering as it appears in his brief.

In any event, even if Appellant couched these arguments in terms of trial counsel's ineffectiveness, we would deem them meritless. Appellant could not have been significantly prejudiced by the officer's testimony, even if technically inadmissible, where such testimony was merely cumulative of the admissible testimony of Mr. Brown regarding the same threats. *See Hardy, supra*.

## K

Appellant also asserts:

> The record reflects that police were impermissibly allowed to testify that several people were interviewed and not one of those individuals contradicted the claim that only [Appellant] had a gun. That was inadmissible hearsay and a violation of the right of confrontation. In *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011), the Court decided that the Sixth Amendment's confrontation clause gives the accused "in all criminal prosecutions, … the right … to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Here, trial counsel did object but never stated that there was a constitutional violation. Trial counsel was ineffective for not objecting to the constitutional violation. *Commonwealth vs. Brinkley*, 480 A.2d 980 (Pa. 1984). The unavoidable effect of the event deprives the defendant of a fair trial. *Commonwealth vs. Chestnut*, 512 A.2d 603 (Pa. 1986). Moreover, there is ineffectiveness on the part of direct appeal counsel for not including the issue on appeal. *See* [N.T.,] 11/17/11, … 49[,] … 59-61.

Appellant's Brief at 15-16.

At issue here are the following questions and answers from the direct testimony of Detective Griffin:

> [The Commonwealth:] Now, did any of those witnesses provide you with information that contradicted anything you had said before, such as, that there was another person with a weapon, or

- 18 -

anyone other than [Appellant] was … holding the gun and shooting?

[Objection overruled]

[Detective Griffin]: No, we did not receive any contradicting information. Just that [Appellant] was the only one armed with a weapon during this incident.

\*\*\*

[The Commonwealth:] During that two-week plus span [after the shooting], at any time prior to [Appellant] being taken into custody, did he or anyone … approach you with information that, in fact, that was threatened by [victim] or anything like that?

[Detective Griffin:] No, not at all.

N.T., 11/17/11, at 49, 59-60.

Appellant fails to convince us that he is entitled to relief with regard to his allegations of trial counsel's and appellate counsel's ineffectiveness in this regard. It is well-established that:

> Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). … "Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." [**Commonwealth v.**] **Cunningham**, [805 A.2d 566,] 572 [(Pa. Super. 2002)]. **See**, **e.g.**, Pa.R.E. 803 (listing exceptions). On the other hand, "evidence that would constitute inadmissible hearsay if offered … for one purpose may be admitted for another purpose…." **Commonwealth v. Underwood**, … 500 A.2d 820, 822 ([Pa. Super.] 1985) (collecting cases). "[A]n out-of-court statement offered to explain a course of conduct is not hearsay." **Commonwealth v. Cruz**, … 414 A.2d 1032, 1035 ([Pa.] 1980).

**Commonwealth v. Dent**, 837 A.2d 571, 577 (Pa. Super. 2003).

First, it is not clear that the statements at issue were, in fact, hearsay statements offered for the truth of the matter asserted therein. Officer Griffin

- 19 -

primarily testified as to the *lack of statements* in support of Appellant's self-defense theory, not the contents of the statements that he did receive. Nowhere does he describe the actual content of any out-of-court statements, other than to indicate that they were consistent with the theory of the prosecution, and inconsistent with the theory of the defense. As such, there was no evidentiary error by the trial court. Thus, to the extent that Detective Griffin testified to the lack of statements by witnesses he interviewed that supported Appellant's claim of self-defense, we conclude that his testimony was not hearsay and, therefore, admissible. As such, neither trial counsel's nor appellate counsel's omissions prejudiced Appellant.

More problematic was the portion of Detective Griffin's first answer where he stated, "Just that [Appellant] was the only one armed with a weapon during this incident." N.T., 11/17/11, at 49. This statement appears to be hearsay. However, the hearsay does not describe a particular statement by a particular eyewitness but, rather, it describes a pattern of out-of-court statements that identified Appellant as "the only one armed" in the confrontation that led to victim's death. *Id.* This lack of detail or specificity suggests that the hearsay was not likely to have a significant prejudicial effect. There was no indication regarding the eyewitnesses' ability to perceive the events in question, or any other detail that might give the hearsay statement added weight before the jury. The statement was brief. No follow-up questions were asked by the prosecutor to elaborate on the out-of-court statements.

The hearsay statement was also cumulative of the far more detailed and clearly admissible testimony by Mr. Brown, who stated that he only saw Appellant with a firearm. Moreover, Appellant does not even dispute that he held and then fired the weapon; that is to say, the hearsay testimony spoke mostly to facts that were not in dispute. For all of the above reasons, we conclude that even if the statement was inadmissible hearsay, trial counsel's failure to lodge a more specific objection did not significantly prejudice Appellant, and his direct appeal counsel did not prejudice Appellant by failing to challenge the trial court's overruling of trial counsel's objection on direct appeal.

In **Crawford**, the Supreme Court of the United States held that out-of-court, testimonial statements by witnesses are barred under the Confrontation Clause, unless 1) the witnesses are unavailable and, 2) the defendant had a prior opportunity to cross-examine them. **Crawford**, 541 U.S. at 59. Thus, exceptions to the hearsay rule do not always render hearsay statements admissible. If a hearsay statement is testimonial in nature and there was no prior opportunity to cross-examine, it is inadmissible against a criminal defendant. Moreover, it is clear that the at-issue statements here were testimonial in nature, as they were given to police in the course of a criminal investigation where the primary purpose of the questioning was to "establish or prove past events potentially relevant to later criminal prosecution[,]" rather than enabling police to "meet an ongoing emergency." **Davis v. Washington**, 547 U.S. 813, 822 (2006).

Nevertheless, even **Crawford** violations are subject to the federal harmless error rule. **Commonwealth v. Brown**, 185 A.3d 316, 330 (Pa. 2018). We find harmless error where:

(1) the error did not prejudice the defendant or the prejudice was de minimis;

(2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or

(3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Id.** (quoting **Commonwealth v. Young**, 748 A.2d 166, 193 (Pa. 1999)).

Here, as discussed above, the erroneously admitted hearsay evidence was merely cumulative of the untainted evidence provided by Mr. Brown. Accordingly, Appellant's **Crawford** claim affords him no more relief than his hearsay claim. Consequently, Appellant was not prejudiced by trial counsel's failure to raise a **Crawford** objection to Detective Griffin's testimony.

### **M**[8]

Finally, Appellant argues that defense counsel should have objected when evidence was introduced "that when police came to the home of [Appellant's] family with an arrest warrant they had to force entry, which meant that the family inside did not let them in." Appellant's Brief at 16. Appellant claims

---

[8] Appellant also skipped the letter "L" in the argument section of his brief. Again, to avoid confusion, we retain Appellant's lettering as it appears in his brief.

this was evidence of "guilt by association" that was inadmissible. **Id.** Appellant provides no analysis of this two-sentence claim, and no supporting case law. Accordingly, we deem it waived. **See Treiber, supra**.

Because we conclude that all of Appellant's IAC claims were either waived, lack merit, or did not result in outcome-determinative prejudice, we ascertain no abuse of discretion in the PCRA court's order dismissing Appellant's PCRA petition.[9]

Order **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/6/20

---

[9] We do not address the PCRA court's actual basis for rejecting Appellant's claims. However, "we may affirm the decision of the PCRA court if there is any basis on the record to support the PCRA court's action; this is so even if we rely on a different basis in our decision to affirm. **Commonwealth v. Blackwell**, 936 A.2d 497, 499 (Pa. Super. 2007) (cleaned up).