**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| | : | |
| SAJAAD HALL | : | |
| | : | |
| Appellant | : | No. 2650 EDA 2022 |

Appeal from the PCRA Order Entered September 9, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001164-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAJAAD HALL | : | |
| | : | |
| Appellant | : | No. 2652 EDA 2022 |

Appeal from the PCRA Order Entered September 9, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001165-2015

BEFORE:    STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                **FILED AUGUST 16, 2024**

Sajaad Hall ("Hall") appeals from the orders dismissing both of his first,

timely filed Post Conviction Relief Act ("PCRA") petitions.[1]  We affirm.

On direct appeal, this Court summarized the underlying facts as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

> On June 21, 2014[,] at around 11:30 p.m., [Hall] was . . . at a block party with more than 300 people . . . in Philadelphia. [Hall] fired eleven shots from a .45 caliber handgun at Virgil Ross because Ross had shot [Hall] in the leg on a prior occasion. One bullet struck Ross in the back while another bullet struck Jameer Haynesworth, a bystander, in the head[. Hall] entered a vehicle and fled the area. Haynesworth [died as a result of this injury.]

***Commonwealth v. Hall***, 192 A.3d 262 (unpublished memorandum at **1-2) (Pa. Super. 2018), *appeal denied*, 195 A.3d 563 (Pa. 2018). In the ensuing investigation, eyewitness Dontay Williamson, then fifteen years old, told Philadelphia Police detectives: (1) someone told him that Hall was about to shoot Ross; and then (2) Williamson observed Hall firing a black and silver gun. Detectives also interviewed Khyle Dais, who identified Hall in a photo array as the person who fired the gun.

Hall was arrested and charged at Trial Docket CP-51-CR-0001164-2015 ("Docket 1164") with the fatal shooting of Haynesworth, and separately charged at CP-51-CR-0001165-2015 ("Docket 1165") with the attempted murder of Ross. The two cases proceeded to a consolidated jury trial, where Hall was represented by James Berardinelli, Esquire ("Trial Counsel"). The two eyewitnesses, Williamson and Dais, both recanted their prior statements that they observed Hall firing a gun; indeed, Williamson denied being present at the block party. The Commonwealth thus impeached them with their prior statements and played the video recordings of both giving these statements to the police. ***See*** N.T., 1/11/17, at 61, 161. Pertinently, in his prior

- 2 -

statement, Williamson also stated that in talking with the police, he feared for his and his family's safety. *See id*. at 157.

Hall did not testify, but called as a defense witness Ross, the shooting victim who survived.[2] Ross acknowledged that he did not give any formal statement to Philadelphia Police detectives. However, more than two years after the shooting, Ross told a private investigator, hired by the defense, that he did not see Hall on the night of the shooting, and that he was shot by someone else known as "Black." N.T., 1/11/17, at 241, 244. On cross-examination, the Commonwealth questioned Ross about his being indicted, along with thirteen others, for participation in a "violent drug organization known as TNT." *Id*. at 244. The Commonwealth further asked Ross: whether TNT had a feud with a rival gang, "Dirty Block;" whether individuals from both groups were arrested for "back and forth . . . shootings;" and whether Ross had a problem with Hall specifically. *Id*. at 247-49. Ross denied he was a member of a gang, stated he knew Hall but denied shooting him, and admitted that he was awaiting trial on an attempted murder charge for shooting someone named Nadir Al-Malik, a member of another gang. *See id*. at 244, 246, 251. When asked if Hall were a member of a gang or was a known associate of Al-Malik, Ross replied that he did not know. *See id*. at 247, 251.

_____

[2] Ross did not testify as a Commonwealth witness.

On January 12, 2017, the jury found Hall guilty of: (1) first-degree murder and carrying a firearm without a license, with respect to victim Haynesworth; and (2) attempted murder and aggravated assault,[3] with respect to Ross. The matter proceeded immediately to sentencing, where the trial court imposed: (1) an aggregate sentence of life imprisonment without parole, at Docket 1164; and (2) a consecutive, aggregate term of twenty to forty years' imprisonment, at Docket 1165.

Hall filed a direct appeal at Docket 1164 only. This Court affirmed his judgment of sentence for the murder of Haynesworth. The Pennsylvania Supreme Court denied Hall's petition for allowance of appeal. *See Hall*, 192 A.3d 262, *appeal denied*, 195 A.3d 563.

On March 14, 2019, Hall filed timely *pro se* PCRA petitions at both dockets.[4] The PCRA court appointed Stephen O'Hanlon, Esquire, who filed amended PCRA petitions, in December 2019 and November 2020, at both dockets. These petitions averred Trial Counsel was ineffective for failing to, *inter alia*: (1) object to hearsay evidence about gang activity; (2) object to

---

[3] *See* 18 Pa.C.S.A. §§ 2501(a), 6106(a)(1), 901(a), 2702(a).

[4] When the Pennsylvania Supreme Court denied Hall's petition for allowance of appeal, he had ninety days, or until January 9, 2019, to file a writ of *certiorari* with the United States Supreme Court. *See* U.S.S.Ct.R. 13. Hall did not file one, and thus his judgment of sentence for PCRA purposes became final on that date. *See* 42 Pa.C.S.A. § 9545(b)(3). Hall then generally had one year, or until January 9, 2020, to file a timely PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1).

testimony regarding witness intimidation; (3) impeach Philadelphia Homicide Detective Joseph Bamberski on his testimony about another witness' unwillingness to cooperate with police; (4) object to testimony that Hall previously possessed a firearm; (5) obtain discovery on alleged gang membership; and (6) present character evidence.

The PCRA court[5] denied relief on all the above claims, but conducted evidentiary hearings solely on an additional claim — that Trial Counsel was ineffective for not presenting an alibi witness.[6] On September 9, 2022, the PCRA court dismissed Hall's PCRA petitions. Hall filed timely notices of appeal, and subsequently filed a Pa.R.A.P. 1925(b) statement *nunc pro tunc*.[7]

_____

[5] The PCRA judge also presided over the jury trial.

[6] On appeal, Hall does not present any claim concerning this alibi witness issue.

[7] At this juncture, we summarize the following procedural history. The charges relating to each victim were listed at separate trial dockets. Hall, represented by Attorney O'Hanlon, filed identical amended PCRA petitions at each docket. Subsequently, Edward Foster, Esquire, entered his appearance and represented Hall at the evidentiary hearings.

The PCRA court entered separate dismissal orders at each docket, and Attorney Foster appropriately filed separate notices of appeal. *See Commonwealth v. Walker*, 185 A.3d 969, 972 (Pa. 2018) (holding that when "one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed"). This Court *sua sponte* consolidated the two appeals.

On July 10, 2023, this Court dismissed Hall's appeals for failure to file a brief. Ultimately, however, this Court reinstated the appeals, after Hall requested appointment of new counsel. The PCRA court re-appointed
*(Footnote Continued Next Page)*

Hall raises seven issues for our review:[8]

1. Did the PCRA court err and was dismissal of [Hall's] PCRA petition not supported by the record and free from legal error because [T]rial [C]ounsel was ineffective for not objecting to the admission of highly prejudicial hearsay, an ongoing hearsay narrative, and prosecutorial misconduct in relation to argument therefrom?

2. Did the PCRA court err and was dismissal of [Hall's] PCRA petition not supported by the record and free from legal error because [T]rial [C]ounsel was ineffective for failing to object to testimony regarding [Hall's] alleged membership in a street gang?

3. Did the PCRA court err and was dismissal of [Hall's] PCRA petition not supported by the record and free from legal error because [T]rial Counsel was ineffective for not objecting to extensive testimony regarding witness intimidation and retaliation when there was no evidence that [Hall] had engaged in same?

4. Did the PCRA court err and was dismissal of [Hall's] PCRA petition not supported by the record and free from legal error because [T]rial [C]ounsel was ineffective for not impeaching Detective . . . Bamberski with documents provided in discovery?

5. Did the PCRA court err and was dismissal of [Hall's] PCRA petition not supported by the record and free from legal error because [T]rial [C]ounsel was ineffective for not objecting to testimony regarding [Hall's] unrelated, prior possession of a firearm?

6. Did the PCRA court err and was dismissal of [Hall's] PCRA petition not supported by the record and free from legal error because [T]rial [C]ounsel was ineffective for not obtaining discovery on alleged gang membership and for allowing a

_____

Attorney Hanlon and granted leave to file a Rule 1925(b) statement *nunc pro tunc*, and Attorney Hanlon filed a Rule 1925(b) statement.

[8] For ease of discussion, we have reordered Hall's issues.

hearsay narrative on gang membership in relation to [Hall] when [Hall] informed [T]rial [C]ounsel that [he] was not a member of a gang and this resulted in prejudice to [him] at trial?

7. Did the PCRA court err and was dismissal of [Hall's] PCRA petition not supported by the record and free from legal error because [T]rial [C]ounsel was ineffective for advising [Hall] not to present reputation / character evidence for . . . being peaceful and nonviolent because [Hall] would be impeached with gang membership?

Hall's Brief at 4-5 (unnecessary capitalization omitted).[9]

In his first issue, Hall avers, *inter alia*, the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for not objecting to hearsay, nor statements in the Commonwealth's closing argument referring to this hearsay. "[T]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the [PCRA] court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Walker**, 110 A.3d 1000, 1003 (Pa. Super. 2015) (citation omitted).

_____

[9] Preliminarily, we note the large number of claims raised on appeal by counsel, Attorney O'Hanlon. We also observe the appellate brief frequently fails to identify the particular evidence at issue in Hall's ineffectiveness claims. Furthermore, the brief itself is merely a near-identical reproduction of the amended PCRA petitions, lacking in discussion of the PCRA court's analyses for denying relief — even where the PCRA court has pointed out Hall's mis-characterizations of the record. We remind counsel of "the importance of expert, focused appellate advocacy." **Commonwealth v. Ellis**, 626 A.2d 1137, 1140 (Pa. 1993) (citation omitted); **see also Commonwealth v. Walker**, 954 A.2d 1249, 1255 (Pa. Super. 2008) (*en banc*) (stating "[t]his Court is an error correcting court; it is not an error-finding court").

To establish relief for a claim of ineffective assistance of counsel, the petitioner must show: "(1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission." ***Id***. (citation omitted). "A petitioner establishes prejudice when he demonstrates 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" ***Id***. "Generally, counsel's performance is presumed to be constitutionally adequate[.]" ***Id***. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim." ***Commonwealth v. Rega***, 933 A.2d 997, 1018 (Pa. 2007). "Trial counsel will not be deemed ineffective for failing to pursue a meritless claim." ***Id***. at 1019.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only where the court clearly abused that discretion." ***Commonwealth v. Hardy***, 918 A.2d 766, 776 (Pa. Super. 2007). Generally, hearsay is not admissible. ***See*** Pa.R.E. 802. "Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted." ***Hardy***, 918 A.2d at 777 (*citing* Pa.R.E. 801(c)). This Court has stated:

> Even if a court does wrongly admit hearsay, this Court will not disturb a verdict on that basis alone if the admission constitutes harmless error. Error is harmless if: (1) the prejudice to the appellant was nonexistent or *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted, substantially similar and properly admitted evidence; or (3) the

properly admitted and uncontradicted evidence was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id*. (citations omitted).

Hall's first issue presents several allegations of ineffective assistance of counsel, which we address *seriatim*. First, Hall asserts the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for not objecting to a hearsay statement attributed to eyewitness Williamson. By way of background, we reiterate that at trial, Williamson denied he was present at the scene of the shooting, and thus the Commonwealth impeached him with the prior statement he gave to police. Within this prior statement, Williamson said: "I was on 8th and Montgomery, and I was told that [Hall] was about to start shooting. [Hall] was going to shoot [Ross] because [Ross] shot [Hall] before in the leg." N.T., 1/11/17, at 142.

On appeal, Hall contends: (1) the above statement suggested he had a motive; (2) the statement was inadmissible double hearsay; and (3) Trial Counsel was ineffective for not objecting to it. Hall insists that "it does not matter that there were multiple identifications [of him as the shooter] at trial" because he could not confront the individuals who told Williamson the above information. Hall's Brief at 19.

In denying relief, the PCRA court acknowledged that "whatever Williamson was told about the shooting was hearsay and inadmissible." PCRA Court Opinion, 12/28/22, at 6. Nevertheless, the PCRA court emphasized:

However, in that same statement to police, shortly thereafter, **Williamson stated that he personally saw [Hall] do the shooting**: "I didn't see [Hall] pull the gun, but I seen him fire, like, five to six times, but I heard, like, at least nine shots."

Because Williamson was an eyewitness to the crime and described seeing [Hall] do the actual shooting here at issue, his statement about what he had heard before the shooting started was inconsequential and could not have prejudiced [Hall].

*Id*. (emphasis and paragraph break added) (*quoting* N.T., 1/11/17, at 143).

Based on our review of the record, we discern no error by the PCRA court. At trial, as described by the PCRA court, Williamson told police that he observed Hall firing the gun "five or six times" and heard "at least nine shots." N.T., 1/11/17, at 143. On appeal, Hall does not dispute the presentation or import of this evidence — even though it formed the basis for the PCRA's denial of relief. Instead, Hall continues to insist that "Williamson's information . . . was based upon hearsay and individuals that [Hall] could not confront." Hall's Brief at 19. This claim is plainly belied by Williamson's statement that he observed Hall firing a gun.

Accordingly, as the PCRA court pointed out, even if we were to find error in the admission of the hearsay portion of Williamson's statement, the statement was cumulative of not only Williamson's own observation of Hall firing the gun, but also Dais' prior identification of Hall as the shooter. **See Hardy**, 918 A.2d at 777. Dais told police he witnessed someone firing a gun "more than ten" times and identified Hall in a photo array as the shooter. **See** N.T., 1/11/17, at 38-39, 41-42. Accordingly, any prejudice to Hall was *de*

*minimus*. ***See id***. As we conclude his underlying evidentiary issue did not have arguable merit, his claim of Trial Counsel's ineffectiveness, for not objecting to the hearsay portion of Williamson's prior statement, is meritless. ***See Walker***, 110 A.3d at 1003. We do not disturb the PCRA court's denial of relief on this claim.

Next, within his first issue, Hall asserts the Commonwealth committed prosecutorial "misconduct, again without objection, during closing argument by repeating hearsay to the jury." Hall's Brief at 18 (*citing* N.T., 1/12/17, at 28). Hall does not identify the allegedly improper statement, but our review of the trial transcript page he cites reveals that he is referring to Williamson's prior statement above, that someone told him Hall "was about to start shooting." N.T., 1/12/17, at 28. The sum of Hall's discussion is that: (1) Firearms Identification Unit Officer Ronald Weitman "did not provide any evidence tying [him] to the underlying shooting;" (2) the eyewitnesses, Williamson and Dais, "purportedly" told police that he was the shooter, but they recanted these statements at trial; and (3) the shooting victim, Ross, told police that another person committed the shooting.[10] Hall's Brief at 18-19.

_____

[10] As stated above, Ross did not give a formal statement to police, but rather only to a private investigator hired by the defense. ***See*** N.T., 1/11/17, at 240, 243.

We conclude Hall's claim of prosecutorial misconduct, for an alleged improper closing statement, is waived for PCRA review because he could have raised it at trial and on direct appeal. *See* 42 Pa.C.S.A. §§ 9543(a)(3) (stating that to be eligible for PCRA relief, the claim must not have been waived), 9544(b) (stating an issue is waived if the petitioner could have raised it but failed to do so before or at trial or on appeal). To the extent Hall argues Trial Counsel was ineffective for not objecting to the Commonwealth's closing argument, we incorporate our above discussion, that Williamson also stated he personally observed him firing the gun, and furthermore Dais identified him as the shooter. As Hall's underlying evidentiary issue would not have had arguable merit, his ineffectiveness claim would fail. *See Walker*, 110 A.3d at 1003.

Hall's third argument, within his first issue, is that the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for not objecting to the Commonwealth's "hearsay narrative" about gang activity. Hall's Brief at 10 (capitalization omitted). Hall does not identify any particular hearsay statement, but maintains the Commonwealth confronted the shooting victim, Ross, with "police hearsay" "which was, in turn, street intelligence of the oblique narrative kind." *Id*. at 18. Hall also describes the hearsay evidence as the Commonwealth "read[ing] in a bunch of individuals [*sic*] that were either shot or killed while implicating" him. *Id*. (*citing* N.T., 1/11/17, at 249-52). Hall acknowledges "[t]here was occasional objection" by Trial Counsel,

but maintains it was "inadequate and . . . there was nothing to get the cat back in the bag." Hall's Brief at 18. Hall also contends that an October 26, 2016, pretrial order "precluded mention of the Dirty Block gang and TNT indictments." *Id*.

As Hall's second issue overlaps with this argument, we also review it at this juncture. Hall avers the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for not objecting to the same testimony because it implied his membership in a street gang. *See id*. at 31. Hall asserts he was denied a fair trial "because it was impossible to confront speculative allegations of associations with gangs that did things that were not tied to" him. *Id*. at 32. Hall reiterates the trial court issued a limiting order on October 26, 2016, and thus the Commonwealth committed "extensive prosecutorial misconduct" in "relaying" the extensive hearsay evidence. *Id*. at 26, 31.

We observe Hall has failed to identify, aside from citing a four-page span in the trial notes of testimony, the particular hearsay statements he purports to challenge. Instead, as noted above, he vaguely refers to "police hearsay" and "street intelligence of the oblique narrative kind." Hall's Brief at 18. We could determine Hall's argument to be waived for vagueness. *See* Pa.R.A.P. 2119(a) (requiring argument to include discussion of the particular point and pertinent citation of authorities). Nevertheless, to the extent we may construe Hall's challenge to be to all of the testimony appearing at the cited pages, we

consider the PCRA court's review of those same statements. *See* Hall's Brief at 18 (*citing* N.T., 1/11/17, at 249-52), 31 (*citing* N.T., 1/11/17, at 252).

The PCRA court found Trial Counsel did object to the hearsay statements:

> [I]n the portion of the cross-examination cited by [Hall] in support of this claim, [***Trial C]ounsel objected to every question that called for a hearsay response, and every objection was sustained***. Accordingly, [T]rial [C]ounsel was not ineffective . . .. To the extent that [Hall] intended to base his claim on other testimony, the claim is waived for vagueness.

PCRA Court Opinion, 12/28/22, at 7 (emphasis added).

Based on our review of the record, we discern no error by the PCRA court. At pages 249 through 252 of the January 11, 2017 trial transcript, the Commonwealth cross-examined Ross about: (1) whether Ross was a member of the TNT gang; (2) whether Ross told an individual named Hamin Williamson that he and Hall had a problem "because of the shootings that were happening back and forth in the area;" (3) what unnamed others were saying about Ross and Hall shooting each other; (4) what another person, Christopher McCutchen, "said;"[11] (5) the fact that McCutchen was in prison awaiting trial on drug and firearms charges; (6) that Montae Fulton[12] and others were

_____

[11] Before the Commonwealth could refer to what McCutchen "said," Trial Counsel objected on hearsay grounds, and the trial court sustained the objection. N.T., 1/11/17, at 249.

[12] Montae Fulton was also referred to at trial as "Dontay Fulton." N.T., 1/11/17, at 180.

murdered; and (7) that the victim Haynesworth was murdered at the block party. N.T., 1/11/17, at 249-52.

Over these four pages of testimony, Trial Counsel raised two objections when the question called for a hearsay response. Both objections were sustained. *See id*. at 249-50. Trial Counsel raised two additional objections to other questions, on the grounds the question was asked and answered and the answer called for speculation. *See id*. at 251-52. Thus, the factual premise of Hall's claim — that Trial Counsel did not object on hearsay grounds — is mistaken. As Hall did not show his underlying issue had arguable merit, the PCRA court properly denied relief on this claim. *See Walker*, 110 A.3d at 1003.

Additionally, with respect to Hall's assertion that the trial court issued an October 26, 2016 pretrial order that "precluded mention of the Dirty Block gang and TNT indictments," the PCRA court frankly opined there was no such order. Hall's Brief at 18. The PCRA court pointed out that although there was a status hearing on that date: (1) the notes of testimony of this hearing made no reference to any preclusion order; (2) there was no order entered on the docket nor on the PCRA court's "document management system;" (3) the court had no recollection of any such order; and (4) in any event, Hall "never proffered any evidence in support of his claim that such an order existed." PCRA Court Opinion, 12/28/22, at 7-8 n.4.

We note with disapproval that on appeal, Hall does not acknowledge any of this discussion, nor present any copy of the purported order. Instead, Hall simply reproduces verbatim the same discussion in his PCRA petitions that the PCRA court has rejected. Thus, no relief is due on Hall's claim that there was a pretrial evidentiary order. For the foregoing reasons, we conclude the PCRA court's rulings are supported by the record and free of error, and Hall's first and second issues warrant no relief.

In his third issue, Hall asserts the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not objecting to evidence about Williamson's fear of retaliation. We reiterate that we review the admission of evidence for an abuse of discretion. *See Hardy*, 918 A.2d at 776. "[A]ny attempt by a defendant to interfere with a witness'[ ] testimony is admissible to show a defendant's consciousness of guilt." *Rega*, 933 A.2d at 1009.

In *Commonwealth v. Collins*, 702 A.2d 540 (Pa. 1997), at trial a witness recanted his prior statement that the defendant fatally shot the victim. *Id*. at 543. The witness also stated "he was afraid for his life if he testified," although he did not testify that the defendant, or anyone else, had threatened him, and instead, the witness' "fear arose from the fact that he was in prison." *Id*. at 543-44. On appeal, the defendant argued the "line of questioning was improper because it unfairly created the false impression that [he] had threatened [the witness] with reprisals if he were to testify." *Id*. at 544. Our Supreme Court acknowledged "that threats against a witness are not

admissible as an admission of guilt against the accused unless the accused is linked in some way to the making of the threat." *Id*. Nevertheless, the Court noted the defendant "may not have [been the one to] threaten[] . . . acts of violence against" the witness, and held the Commonwealth's "questioning was permissible to demonstrate [the witness'] motive for changing his testimony was that he was afraid of the consequences if he testified truthfully." *Id*.

Hall asserts Trial Counsel was ineffective for not objecting to "extensive testimony" by Williamson that he and his family would "likely be[] killed in retaliation for his testimony." Hall's Brief at 20, 22 (capitalization omitted). Hall avers: (1) "there was nothing to tie [him] to involvement in" any intimidation; (2) the evidence was speculative and highly prejudicial; and (3) "[c]ontrary to the PCRA court's position, such inflammatory testimony should not have been admissible for any reason." *Id*. at 20, 22.

By way of background, we clarify there was no trial "testimony" about witness intimidation, but rather, Williamson made the statement in his prior statement to police, which was presented at trial when the Commonwealth impeached him. Hall's Brief at 20 (capitalization omitted). The relevant exchange was as follows:

> [Police Detective:] Mr. Williamson, is there anything else you could add to your interview or information you have that could be helpful to the case?
>
> [Williamson:] No. I did talk with my mom. With me telling you this stuff, **I could get killed and my family could get hurt.** I talked with my mom. We would have to be moved if this interview gets passed along.

- 17 -

N.T., 1/11/17, at 157 (emphasis added and quotation marks omitted).

In denying relief on Hall's ineffectiveness claim, the PCRA court held the above statement was admissible under **Collins** to explain why Williamson recanted his prior statement. PCRA Court Opinion, 12/28/22, at 10. The PCRA court pointed out — consistently with Hall's argument — that the above statement did not "describe any instances of witness intimidation by anyone:"

> Williamson was merely describing his fear, after a discussion with his mother, that he could face retaliation for being a witness at a murder trial. Because there was no reference to any actual threats or acts of intimidation, [Hall] suffered no prejudice from [T]rial [C]ounsel's decision not to object or request a curative instruction.

**Id**.

Based on our review of the record, we discern no error by the PCRA court. On appeal, Hall does not adequately address the court's reasoning. His sole discussion is a bald, unsupported conclusion: "Contrary to the PCRA court's position, such inflammatory testimony should not have been admissible for any reason." Hall's Brief at 22. The trial transcript, however, supports a finding that the underlying facts were analogous to those presented in **Collins**: Williamson previously told police he saw Hall fire a gun; Williamson also stated that in talking with the police, he feared for his and his family's safety; at trial, Williamson disavowed his prior statement; and the Commonwealth presented his statement about fearing retaliation in order to show why Williamson would recant his statement at trial. **See Collins**, 702

A.2d at 543-44. Furthermore, as the PCRA court accurately observed — and consistent with Hall's argument — there was no implication that Hall, or anyone else, was connected to any witness intimidation against Williamson. Instead, Williamson merely stated that he feared he could be killed and his family hurt. *See* N.T., 1/11/17, at 157. Thus, the PCRA court's reasoning, that Williamson's prior statement was admissible pursuant to *Collins*, was not in error. Hall did not show that his underlying evidentiary issue had arguable merit, and thus his ineffectiveness claim failed. *See Walker*, 110 A.3d at 1003. As the PCRA court's ruling is supported by the record and is free of error, Hall's third issue warrants no relief.

In his fourth issue, Hall avers the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for not impeaching Detective Bamberski. This Court has stated: "The scope and vigor of cross-examination is a matter which falls within the ambit of sound trial strategy to be exercised by trial counsel alone." *Commonwealth v. Molina*, 516 A.2d 752, 757 (Pa. Super. 1986) (citation omitted).

By way of background, we summarize that at trial, Detective Bamberski testified he learned that at the time of the shooting, Ross was with Montae Fulton, then a minor.[13] *See* N.T., 1/10/17, at 219. Fulton fled, but the police

---

[13] Hall refers to this witness as "Dontay Fulton." However, as noted above, this witness was also referred to at trial as "Montae Fulton." N.T., 1/11/17, at 180.

recovered his cell phone at the scene. *See id*. Detective Bamberski made several attempts to talk with Fulton through his mother, but both she and Fulton were "uncooperative" and "refused to come in" for an interview. *Id*. Detective Bamberski also explained that this matter was assigned to his division, the Special Investigations Unit, for three or four days before it was transferred to the Homicide Task Force. Subsequently, Fulton was murdered.

On appeal, Hall maintains that Detective Bamberski "false[ly]" testified that Fulton and his mother were uncooperative with the police investigation "and never came to the homicide detective[] division." Hall's Brief at 22. Hall insists Trial Counsel was ineffective for not impeaching Detective Bamberski "with documents provided in discovery," which would have shown Fulton and his mother did cooperate, go to the police station, and in fact "stated that [he] was not the shooter." *Id*. (capitalization omitted). Hall reasons that proper cross-examination and impeachment would have undermined the "detective's story and the case generally against" him. *Id*. at 24. Additionally, Hall avers the PCRA court "admit[ted] to a degree" that Detective Bamberski "effectively lied under oath." *Id.* Hall concludes the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for not impeaching Detective Bamberski.

Preliminarily, we observe Hall does not identify what discovery would have been relevant to impeaching Detective Bamberski. Instead, he merely cites to an exhibit to his own PCRA petition, which we note was a police

"Activity Sheet" dated July 18, 2014. The PCRA court observed this activity sheet was **not** prepared by Detective Bamberski, and it was dated after this matter was transferred out of his unit.[14] The PCRA court then summarized what the activity sheet stated: (1) on July 10, 2014, detectives made contact with Fulton; (2) Fulton and his mother did visit the Homicide Unit; (3) "Fulton stated he was in the area of the shooting **but did not see who was shooting**;" and (4) Fulton declined to give an interview. PCRA Court Opinion, 12/28/22, at 11 (emphasis added). The PCRA court thus opined that Hall "misstate[d] the contents of the police activity sheet," as Fulton did not state that Hall was not the shooter. **Id**. The PCRA court acknowledged that Detective Bamberski "incorrectly testified that Fulton and his mother never went to the Homicide Unit," but found the detective's "failure to know about Fulton's fruitless visit to Homicide[,] after a different unit [had taken] over the investigation, had little or no probative value." **Id**.

Based on our review of the record, we discern no error by the PCRA court. At trial, Detective Bamberski testified:

> I made attempts to locate . . . and interview [Fulton]. I eventually spoke to his mother. [Fulton] at the time was a juvenile. So **I asked his mother to bring him in, and he and she refused to come in for him to be interviewed.** All she wanted was his

---

[14] At trial, Philadelphia Police Homicide Detective Thomas Gaul, a member of the Homicide Task Force, testified that he "took over" this investigation from Detective Bamberski, and that he prepared the activity police sheet. N.T., 1/11/17, at 172, 181. Detective Gaul stated he contacted Fulton several times, but Fulton "did not supply any specific information" and would not agree to a formal interview. **Id**. at 180-81.

> phone back. When I tried to explain to her that the phone was found at the scene of a crime and I needed to speak to [Fulton] to explain how that got there, she was uncooperative, as was he.

N.T., 1/10/17, at 219 (emphasis added). The detective repeatedly referred to his own interactions with Fulton and his mother. The jury could have construed the above testimony to mean that Fulton and his mother refused Detective Bamberski's requests for an interview. Accordingly, the police activity sheet, which documented Fulton's **subsequent** actions with another unit, did not necessarily contradict Detective Bamberski's testimony. Hall wholly fails to address this rationale by the PCRA court — that "Bamberski's failure to know about Fulton's fruitless visit to Homicide[,] after a different unit . . . took over the investigation, had little or no probative value." PCRA Court Opinion, 12/28/22, at 11. In the absence of any discussion to the contrary, we do not disturb the PCRA court's denial of relief. **See also Walker**, 954 A.2d at 1255 (stating that "[t]his Court is an error correcting court; it is not an error-finding court").

In any event, Hall does not address the PCRA court's finding that "the activity sheet nowhere state[d] Fulton, at any time, stated that [Hall] was not the shooter." PCRA Court's Opinion, 12/28/22, at 11. Both Detectives Bamberski and Gaul testified that despite numerous requests, Fulton would

not agree to a formal interview; neither detective testified that Fulton stated he saw and could identify the shooter.[15] **See** N.T., 1/11/17, at 180-81.

In light of the all the foregoing, to the extent Hall baldly claims the police activity sheet would have undermined Detective Bamberski's credibility and by extension the Commonwealth's entire case, we disagree with such a far-reaching claim. "Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. 'As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record.'" **Commonwealth v. Monarch**, 165 A.3d 945, 950 (Pa. Super. 2017) (citations omitted). Thus, even if Trial Counsel had shown Fulton and his mother did visit the Homicide Unit, and thereby discredited Detective Bamberski's testimony, Hall has not established he was prejudiced — that but for Trial Counsel's alleged failure to impeach the detective, the outcome of his trial would have been different. **See Walker**, 110 A.3d at 1003. The jury was tasked with weighing Detective Bamberski's testimony along with all the Commonwealth's other evidence, including Detective Gaul's testimony that Fulton also declined his multiple requests for a formal interview, as well as Williamson's and Dais' prior

---

[15] Furthermore, we note that an earlier police activity sheet documented that in another meeting, Fulton did connect Hall to the shooting. Fulton told homicide detectives: he was with Ross at the time of the shooting, heard gunshots, and ran; Fulton saw "who he believed to be the shooter jump" into a car; Fulton did not say that he recognized the shooter but **stated "people were saying it was" Hall**. Activity Sheet, 6/30/14, at 1-2 (emphasis added). At this meeting, Fulton identified Hall in a photo array.

identifications of Hall as the shooter. **See Rega**, 933 A.2d at 1019. As the PCRA court's ruling is supported by the record and is free of error, Hall's fourth issue warrants no relief.

In Hall's fifth issue, he avers the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for not objecting to testimony that he previously possessed a firearm. Generally, "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). "[W]eapons evidence [is] admissible where it can be shown that the evidence was used in the crime charged." **Stokes**, 78 A.3d at 654. However, "where a weapon [cannot] be specifically linked to a crime, such weapon is not admissible as evidence." **Id**. at 655.

Hall avers the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for not objecting to "testimony regarding [his] unrelated, prior possession of a firearm." Hall's Brief at 24, 26 (*citing* N.T., 1/11/17, at 129-30). Hall fails to describe this particular testimony. Nevertheless, our review of the transcript pages he cites shows the Commonwealth introduced Williamson's prior statement to police, that he had previously seen Hall "once or twice" with a gun, and the gun was silver and black and the "type . . . you put a clip in." N.T., 1/11/17, at 129-30. Hall argues: (1) although "[t]his testimony was corroborated by detectives[, it] was not used for any particular purpose and was propensity evidence only;" (2) the Police Firearms

Investigation Unit "expert did not link any prior guns to the shooting;" and (3) Hall "suffered prejudice because prior bad act/propensity evidence of this kind tars the mind of a jury." Hall's Brief at 26.

In denying relief on this claim, the PCRA court observed the following: on direct appeal, Hall challenged the admission of this same evidence. This Court noted Trial Counsel objected to Williamson's statement that he previously observed Hall possessing a gun, on the ground it was evidence of a prior bad act. However, this Court determined that a separate challenge, to the description of the gun, was waived for failure to object to it. Nevertheless, the Superior Court panel also reasoned, in the alternative, that the trial court properly admitted the evidence under the so-called "similar weapon exception." **Hall**, 192 A.3d 262 (unpublished memorandum at **10-15). In considering Hall's present claim of ineffectiveness, the PCRA court determined that, in light of this Court's determination that the statement was admissible, Trial Counsel was not ineffective for not objecting to it.

Our review reveals the PCRA court's findings are supported by the record. At trial, outside the jury's presence, Trial Counsel did object to the admission of Williamson's prior statement that he previously observed Hall with a gun. **See** N.T., 1/11/17, at 109. The trial court allowed the evidence, however: (1) reasoning there was "nothing in this description that would make it clear that [the prior gun was] not the gun used in the" shooting; and (2)

thus ruling that Williamson's statement was admissible to show Hall had access to the weapon that may have been used in the shooting. *Id*. at 110.

On direct appeal, Hall argued that the prior "silver and black" handgun, to which Williamson referred, was "simply not the same" black Glock that witnesses claimed was used in the shooting.[16] *Hall*, 192 A.3d 262 (unpublished memorandum at *9). While this Court determined the claim was waived because Hall did not separately object to the description of the gun, the panel reasoned Hall's argument was meritless. Williamson also told police that **at the time of the shooting**, he observed Hall firing "a black Glock, [which] had a ladder with it, like an extended clip." *Id*. at 10 (*citing, inter alia*, N.T., 1/11/17, at 147). This Court reasoned "[t]he color of a gun [was] not immutable. The silver color may have been obscured by darkness [or Hall's] hand placement[, or] something else may have impaired Williamson's ability to see the silver color." *Id*. at 11. This Court thus agreed with the trial court's reasoning for admitting the statement — that the gun which Hall was previously observed possessing could have been the same gun he fired at the block party. *See id*.

On appeal, Hall does not address the reasoning by the PCRA court, nor this Court's direct appeal decision — upon which the PCRA court relied. Instead, Hall baldly claims Williamson's statement concerned an "unrelated,

_____

[16] As we discuss **infra**, it was Williamson who also told police that that he observed Hall firing "a black Glock" at the block party. N.T., 1/11/17, at 147.

prior possession of a firearm." Hall's Brief at 24 (capitalization omitted). This assertion wholly ignores that on direct appeal, this Court rejected his claim that the gun he previously possessed could not have been the same gun he fired at the block party. Indeed, this Court reasoned that the descriptions of the two guns were consistent and any uncertainty was for the jury to decide. *See Hall*, 192 A.3d 262 (unpublished memorandum at *11). Because Hall's underlying evidentiary issue did not have arguable merit, he cannot show Trial Counsel was ineffective for not objecting to the evidence. As the PCRA court found, Trial Counsel cannot be deemed ineffective for not pursuing a meritless claim. *See Rega*, 933 A.2d at 1019. The PCRA court's ruling is supported by the record and is free of error, and thus Hall's fifth issue warrants no relief.

In his sixth issue, Hall avers the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for "not obtaining discovery on alleged gang membership," "assuming such discovery existed because [Hall] believes that it could not exist [*sic*]."[17] Hall's Brief at 32, 34 (capitalization omitted). Hall maintains that he informed Trial Counsel he was not a member of the gang and requested he "contest this issue." *Id*. at 34. Hall then contends that "Trial [C]ounsel did not receive any discovery in relation to gang membership was thus unable to rebut same." *Id*. at 32. However, Hall also states, without

_____

[17] Hall also reiterates his claim that Trial Counsel was ineffective for not objecting to "a hearsay narrative on gang membership." Hall's Brief at 32 (capitalization omitted). We have addressed this issue above.

explanation, that his present counsel "obtained discovery from [T]rial [C]ounsel." *Id*. at 34.  Hall concludes he suffered prejudice and was denied "a fair trial because this gang membership narrative was harmful to [him] in the eyes of the jury" and he could not rebut it.  *Id*.

In denying relief, the PCRA court reasoned: "As to [Trial C]ounsel's failure to obtain discovery, [Hall] has proffered no evidence to show how any efforts to obtain additional discovery would have uncovered anything helpful to the defense.  Rather, [Hall] explicitly states he believes that such discovery 'could not exist.'"  PCRA Court Opinion, 12/28/22, at 16.  Furthermore, the PCRA court reiterated there was no evidence presented at trial that Hall himself was a member of a gang.

Again, on appeal, Hall fails to address the PCRA court's analysis, and instead baldly reiterates the same vague and contradictory claims.  Hall does not refute the PCRA court's observation that he failed to proffer any evidence to show additional discovery could have been obtained.  Indeed, Hall continues to concede such discovery may not have even existed.  *See* Hall's Brief at 34. To the extent Hall now claims that his present counsel has obtained discovery from Trial Counsel, Hall does not explain what it is, what it would show, nor how it would have affected the outcome of his trial.  Hall has not presented any discussion beyond a bald claim that Trial Counsel should have obtained additional, unnamed discovery, which might not have even existed.  In light

of these deficiencies and inconsistencies, we conclude his sixth issue is waived. *See* Pa.R.A.P. 2119(a).

In his seventh and final issue, Hall avers the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for advising him not to present character evidence for peacefulness. Pennsylvania Rule of Evidence 402 provides that "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Pa.R.E. 404(a)(2)(A). "When the accused offers evidence of a pertinent character trait that is admitted, it opens the door and allows the Commonwealth to rebut the evidence relating to defendant's character trait." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1263 (Pa. Super. 2014) (*en banc*) (*citing* Pa.R.E. 404(a)(2)(A)). Finally, we reiterate that to establish counsel's ineffective assistance, a petitioner must show counsel's actions lacked an objective reasonable basis. *See Walker*, 110 A.3d at 1003. The petitioner "must prove that the strategy employed by trial counsel 'was so unreasonable that no competent lawyer would have chosen that course of conduct.'" *Rega*, 933 A.2d at 1018-19.

Hall asserts the PCRA court erred in dismissing his claim that Trial Counsel was ineffective for advising him not to present reputation or character evidence for being peaceful and nonviolent. Hall acknowledges, in the heading to this issue, that Trial Counsel advised that if he did present such evidence, he "would be impeached with gang membership." Hall's Brief at 35

(capitalization omitted). However, Hall claims, "there was no basis for such advice because [T]rial [C]ounsel had no discovery to support this advice." *Id*. at 38. Hall maintains that he "wanted to present character evidence and had and [still] has witnesses to support such evidence." *Id*. Finally, Hall contends he suffered prejudice because evidence of good character and a peaceful and nonviolent nature are "sufficient to warrant a not guilty verdict." *Id*. at 35, 39.

In addressing Hall's issue, the PCRA court observed that at trial, Trial Counsel advised the trial court that he discussed with Hall the possibility of calling three character witnesses. *See* PCRA Court Opinion, 12/28/22, at 16 (*quoting* N.T., 1/11/17, at 228). However, Trial Counsel explained he decided not to call character witnesses because it "would open the door to rebuttal character testimony" that Hall had a bad reputation for peacefulness and nonviolence, and furthermore the Commonwealth confirmed it would be ready to call rebuttal character witnesses. Finally, the PCRA court pointed out that the trial court had explained the relevant law to Hall, and Hall stated he agreed with Trial Counsel's decision to not call character witnesses. *See* PCRA Court Opinion, 12/28/22, at 16 (*citing* N.T., 1/11/17, at 230).

Based on our review of the record, we discern no error by the PCRA court. Again, Hall wholly fails to address the PCRA court's discussion. The trial notes of testimony support the PCRA court's findings: (1) Trial Counsel informed the trial court he advised Hall that if he presented character

evidence, the Commonwealth would call witnesses to give damaging character evidence; (2) the Commonwealth provided the names of the character witnesses, all police officers, whom it would call to testify as to their knowledge of Hall's reputation for not being peaceful and law-abiding; and (3) furthermore, the Commonwealth stated Hall had a prior conviction of trespass, which the trial court pointed out was a *crimen falsi* offense. **See** N.T., 1/11/17, at 228-30; **see also Commonwealth v. Davis**, 17 A.3d 390, 397-98 (Pa. Super. 2011) (stating that criminal trespass is a *crimen falsi* offense). Importantly, the trial court also advised Hall that the Commonwealth could not present its rebuttal character evidence unless Hall "[did it] first," and thus Trial Counsel believed, "strategically, . . . that it would not be in [his] best interest to open that door." N.T., 1/11/17, at 230. In response to the trial court's questions, Hall stated that he understood and he did not "have any issues with [t]his decision." **Id**.

Again, on appeal, Hall wholly fails to address the PCRA court's reasoning. Hall refers once to Trial Counsel's stated reason for not presenting character evidence — the risk of opening the door to rebuttal character evidence — in the heading to this issue. **See** Hall's Brief at 35. His argument, however, makes no further mention of this strategy; Hall thus presents no argument why Trial Counsel's strategy "was so unreasonable that no competent lawyer would have chosen that course of conduct." **Rega**, 933 A.2d at 1019. Hall also would have this Court ignore his on-the-record agreement to follow Trial

- 31 -

Counsel's advice. Because Hall has failed to show Trial Counsel's strategy lacked a reasonable objective basis, his ineffectiveness claim was meritless. *See Walker*, 110 A.3d at 1003.

Finally, Hall has not cited, and we have not discovered, any legal authority to support his bald claim that "good character for being peaceful and nonviolent . . . alone [are] sufficient to warrant a not guilty verdict." Hall's Brief at 39. Instead, even if Trial Counsel had presented reputation and character evidence, the jury would have been tasked with weighing it against all of the Commonwealth's other, properly admitted evidence and potential harmful rebuttal evidence. *See Monarch*, 165 A.3d at 950. This Court could not supplant the jury's weight and credibility assessments with our own. As the PCRA court's ruling is supported by the record and is free of error, Hall's seventh issue warrants no relief.

We conclude none of Hall's issues merit relief and thus affirm the orders dismissing his PCRA petitions.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/16/2024